NICHOLS
*v.*
BOTTS.

</div>

<div style="text-align:right">

6 439
45 1016

6 439
46 520

</div>

## J. B. RATHBONE & Co. *v.* SHIP LONDON and Owners.

Where the property of an absent defendant has been attached, and the defendant appears and bonds the property, giving security to pay whatever judgment may be rendered against him, the defendant thereby becomes liable to have a personal judgment rendered against him, although he may have never been cited.

The words *with privilege upon the property attached*, commonly used in judgments in suits by attachment, do not have the effect of limiting the judgment to one *in rem*, where the judgment in other respects is personal.

Suits to annul sales on account of fraudulent preferences of one creditor over others must be brought within twelve months from the date of the sale.

Where a defendant holds money which is claimed by other persons than the plaintiff, his proper course is to pay the money into court; and not to enjoin the plaintiff, and thereby delay the payment of the money. If he does so, he will be liable to the plaintiff for damages in case the injunction be dissolved.

APPEAL from the Fourth District Court of New Orleans, *Strawbridge*, J. *Benjamin* and *Micou*, for plaintiffs. *A. K. Josephs*, for defendants. *E. L. Goold*, for intervenors. The judgment of the court was pronounced by

EUSTIS, C. J. On the 14th of September, 1846, *J. B. Rathbone & Co.*, of New Orleans, brought suit against the captain and owners of the ship London for damages on account of the detention of merchandise on a voyage between Boston and this port. The suit was commenced by attachment, and the ship was taken possession of under the process of the court, and afterwards released on the bond given by the captain in behalf of himself and the owners, with *Green* and *Brother*, of New Orleans, as their sureties. On the 6th of November ensuing, *A. K. Josephs, Esq.*, was appointed by the court to represent the absent defendants. An answer was filed by *Mr. Josephs*, for the *Messrs. Neal*, the owners, and *Lovett*, the captain of the London. It is styled, the answer of the defendants; and it is signed, *Josephs*, for defendants. The suit was very much contested, and judgment was not rendered until January, 1849. It was in favor of the plaintiffs, and was affirmed with a slight modification in this court at the November term, then next ensuing. Vide *Rathbone & Co.* v. *Neal et al.* 4th Ann. 563. *Pendente lite*, the debt of *Rathbone & Co.* was transferred to *Read* and *Chadwick*, of Boston. An order of the court of the first instance was made, subrogating them to *Rathbone & Co.'s* right, and authorizing the suit to be prosecuted for their benefit.

An execution was issued on this judgment, and the ship Columbia, then in port, belonging to two of the defendants, was seized under it. They obtained an injunction against the proceedings under the execution; and the purport of their suit may be stated to be, to relieve and exempt the ship Columbia from seizure, and to obtain protection against certain claims of certain judgment creditors of the original plaintiffs, *Rathbone & Co.*, which had been made upon the debt due by them by way of seizure, &c. The injunction was granted after notice by the

RATHBONE
v.
SHIP LONDON.

judge of the Fourth District Court of New Orleans, before whom all the proceedings had been conducted. The case was determined by a judgment of the court dissolving the injunction and condemning the plaintiffs in injunction, and *Geo. Green* and *Brother*, as their sureties, *in solido*, to pay to the defendants, *Read* and *Chadwick*, three per cent additional interest on the amount of their judgment, to wit, $3262, with ten per cent damages on said sum, and costs; the claims of the judgment creditors of *Rathbone & Co.*, who were also parties to the suit, were dismissed with costs. From this judgment the plaintiffs in injunction and the creditors have appealed.

The first question to be considered is, whether the ship Columbia was liable to seizure, under the execution issued on the judgment in the original suit.

It was held by the district judge, that the judgment was personal against all the defendants *in solido*, and not *in rem* exclusively, or limited to the object attached. The antagonist proposition of the counsel of the appellees is, that his clients were only in court by the attachment of the London, no citation having been served on them, and they being absentees and not within the jurisdiction of the court.

By the judgment, the plaintiffs, *Rathbone & Co.*, recovered, for the use of *Read* and *Chadwick*, from the defendants, *Nathan W. Neal, David A. Neal, William H, Neal* and *J. Lovett, in solido*, the sum of $3622 74, with interest from date, and costs, with the privilege of attaching creditors upon the property attached in the suit, &c. A remittitur was entered for $360 by the plaintiff, and the judgment affirmed afterwards by this court. This judgment, by its terms, is personal. *Lovett* was the master of the ship London, and signed the bond of the ship himself. The last part of the judgment, according the privilege, does not at all exclude or impair the personality of the judgment. It is the usual formula of judgments in cases of attachment, and is probably used for more strongly connecting the judgment with the recourse on the attachment bond.

The defendants bonded the ship and released her from the attachment, under the 259th article of the Code of Practice, which provides that the defendant, if he appear either in person or by his attorney, may, moreover, in every stage of the suit, have the attachment set aside by delivering to the sheriff his obligation for the sum, exceeding by one-half that which is demanded, with the surety of a good and solvent person that he will satisfy such judgment as may be rendered against him in the suit pending.

The condition on which the property attached is released and delivered to the defendant is, that he should appear in person or by attorney; thus rendering himself liable to a judgment on his default to answer; and that he should give security *judicium solvi*. We do not understand that the constitutionality of this article is drawn in question, or the power of the Legislature to enact it. It seems to us beyond all question, that the purpose of the law was to give, in the case provided, to the creditor a personal judgment against the debtor, which he was required to give security to abide by and perform. The words of the article are free from any qualification or ambiguity, and leave room for no other interpretation.

The defendants in the present case fulfilled the conditions on which their property was released from attachment; they appeared by their attorney and pleaded to the merits of plaintiffs' action without any exception or reservation. The authority of the attorney has not been questioned; on the contrary, it is asserted by himself, and the question has turned in argument on the effect of the judgment under our laws.

The case of *Broughton* v. *King*, 2d Ann. 571, has been relied upon in argu-    RATHBONE
ment by the counsel of the appellants, to show that, under the decisions of this    *v.*
court in cases of attachment, no other property than that attached can be seized    SHIP LONDON.
on execution, and that the judgments rendered in attachments are not personal,
but *in rem.* This is true in cases in which the proceedings have been confined
to the property attached exclusively : judgment is then rendered accordingly, and
is *in rem.* In *Broughton* v. *King* there was no appearance by the defendant;
no bonding of the property attached; judgment was rendered by default against
*King*, the absentee. In cases where the parties stood as in the present case,
we believe the practice has been uniform in this State in holding the judgments
to be personal. The opinions expressed by way of argument and illustration,
by Chief Justice Parsons, in the case of *Bissel* v. *Briggs*, 9th Mass. Rep. 469,
have also been urged by counsel in support of his view as to the effect of this
judgment. In that case, there was an appearance and plea to the action by the
judgment debtor. The question before us did not occur, and whatever deference
we may have for the opinions expressed by that distinguished judge, they are
not available to us on the present occasion, and are addressed rather to the policy
than the effect of the provisions of our code. Among the cases referred to by ·
counsel, that of *Paroling* v. *Bird's Executors*, 13 Johnson's Rep. 192, is by far
the strongest in favor of his doctrine. It turned upon the effect of a judgment
under the attachment laws of Connecticut, on which an action was brought in
New York. After a very thorough consideration of all the cases we have had
an opportunity to examine, we do not find ourselves aided in the construction
we are called upon to give to the articles of our code relating to attachments.
If the party defendant elects to appear, give his bond *judicatum solvi*, and
defends the action without reservation, we think he becomes bound by a judg-
ment rendered against him *in personam.*

For these reasons, we think the district judge did not err in holding the
seizure of the ship Columbia, under the execution issued by the defendants in
injunction, to be legal and valid, and in dissolving the injunction, so far as that
execution is concerned.

The next question to be considered is, whether the injunction was rightfully
dissolved, so far as it relates to the other subject of complaint set forth in the
plaintiff's petition, to wit, the seizures of the amount of the judgment at the
instance of two of the creditors of *Rathbone & Co.*, who are appellants, to wit,
*Parsons* and *Lawrence*, and *P. H. Vandervoort*, of New York. These persons
were made parties to the plaintiff's suit in injunction, and in their answers
asserted their right to the judgment debt, under seizures on executions, to the
exclusion of *Read* and *Chadwick*, the validity of whose assignment is contested
on the ground of fraud, in giving an undue preference to the assignees over the
other creditors of *Rathbone & Co.* We think this latter cause of action is pre-
scribed by lapse of time, more than one year having elapsed since the transfer
to *Read* and *Chadwick*, in 1847. It does not appear, that any attempt was made
to defeat it for this cause until the answers of the appellants to the petition in
injunction, filed in February, 1850. The inquiry is, then, limited to the rights
of the creditors to this judgment debt, by virtue of their seizures, in opposition
to those of *Read* and *Chadwick* under their assignment. The claim of *Vander-*
*voort* we will proceed to examine; and our conclusions in relation to it will con-
trol that of the other appellants, *Parsons* and *Lawrence*, their seizure being long
subsequent to that attempted to be made by *Vandervoort.* The transfer to *Read*
and *Chadwick* bears date the 5th of February, 1847; and on the minutes of the

RATHBONE
    *v.*
SHIP LONDON.

court an order is entered on that day, subrogating *Read* and *Chadwick* to the rights of *Rathbone & Co.* as plaintiffs. The seizure at the instance of *Vandervoort* is not shown to have been made previous to this date. One of the defendants, interrogated as to the time when he received a notice of the transfer to *Read* and *Chadwick*, and the seizures, states, that he received notice of the former before April, 1847, to the best of his recollection, and previous to the time he received the notice of the seizure. It appears to us, that as far as it was possible to make a delivery under the transfer, it was effected in this case by the subrogation in the records, and the notice to the debtor. Code, art. 2612. *Read* and *Chadwick* were, as well as *Vandervoort*, creditors of *Rathbone & Co.*; and the assignment was for a valuable consideration. The time has elapsed during which its validity could be contested on the ground of its giving a preference over other creditors. We therefore consider it as valid, and, by its priority in point of time, giving a superior right to the debt assigned over the seizing creditors. We have not scrutinized the validity of these seizures, on the various points raised in argument, because of the priority of the transfer to *Read* and *Chadwick* in point of time, which we consider conclusive against the seizing creditors.

It is a fact not altogether unworthy of remark, that the seizing creditors were entirely dormant, until aroused by the vigilance of the plaintiffs to an assertion of their rights. They permitted *Read* and *Chadwick* to prosecute their suit to judgment at their own trouble and expense, without any disturbance from their conflicting claims during the years of litigation through which it has been protracted.

The district judge has amerced the plaintiffs in damages, on account of the wrongful suing out of the injunction; and we do not think there is any sufficient reason for us to reduce them. The amount of the judgment ought to have been paid into court, if the plaintiffs were really in doubt as to whom the money rightfully belonged. They did not plead the pendency of the seizures in their suit, nor give an opportunity to their antagonists to relieve them from the seizures. We think they had no right thus to make use of the process of the court to delay and embarrass the satisfaction of the judgment, and to subject the defendants in the injunction to unnecessary expenses.

The judgment of the district court is therefore affirmed, with costs.