No. 11,250.

46   73
46   130
46   73
113   699

### INTERDICTION OF B. ONORATO.

The adjudication of property at a judicial sale is itself a complete title, which can not be divested, unless the purchaser refuses to comply with the terms.

The purchaser having complied with his bid by paying the price, the delay to execute an act of sale did not have the effect of annulling the adjudication, nor did it in any respect affect the rights of the owner.

The person interdicted is like the minor, who is under a tutor. The administration of his estate is governed by similar rules.

The curator paid debts of the interdict; incurred for him.

They were paid after the death of the interdict and after the curator's functions had expired.

The payment of debts manifestly due remains unaffected, for it would serve no useful purpose to cancel them and require payment of these amounts by the curator, to the executor of the interdict's succession, in order that he, the executor, may pay them to the creditors.

The amounts being due, the only difference would be payment by the executor instead of payment by the curator.

When payments exonerate the estate from legal charges the executor must show that they are unfounded and excessive, or they will be allowed as a credit on the curator's account.

The executor opposes certain items of the curator's account that are not proven.

APPEAL from the Civil District Court for the Parish of Orleans. *Ellis, J.*

*C. F. Buck* and *Max Dinkelspiel* for the Executor, Appellant.

*E. Howard McCaleb* for Peoples' Bank of New Orleans, Appellee.

*Guy M. Hornor* for the Curator, Appellee.

The opinion of the court was delivered by

BREAUX, J. B. Onorato was interdicted. Joseph L. Onorato was his curator.

After his interdiction, and, in due proceeding, the sale of property was ordered to pay debts.

Under these proceedings the People's Bank became adjudicatee of certain real estate, on the 14th day of November, 1891, for the price of $21,000.

There were mortgages preceding, in rank, the mortgage of the bank. They were paid by the adjudicatee, the amount of its own claim was deducted, and the remainder, $1483.23 in cash, was paid to the auctioneer.

On a rule issued upon the motion of the attorneys of the interdict, the court ordered the recorder of mortgages to cancel and erase the mortgages on the property sold, and referred the mortgagees for payment to the proceeds of the sale of the property.

This adjudication transferred the property to the purchaser. C. P. 690.

His title under the adjudication is indefeasible, unless he refuses to comply with the terms of the sale. Washburn vs. Green, 13 An. 332.

The purchaser had complied with the terms of the sale.

The notarial deed of sale was signed after the death of the interdict.

The executor of his will moved for a rule on the adjudicatee, the People's Bank, in which he alleged that the property had been adjudicated to that bank, and that the adjudication had not been complied with; that he had offered to sign a deed and receive the price.

Concluding, he asked that the adjudicatee show cause why it should not comply with the adjudication and pay the price to the mover, or in default, for cancellation of the adjudication.

After the sale had been complied with by the adjudicatee, the interdict being dead, the executor took a rule on the curator for an account and delivery of the property to him.

The curator filed an account.

The executor filed an opposition on the ground that the account should have been rendered to him; that the authority of the curator ends with the death of the interdict, and that he has no power after that time to do anything but render his account.

That the sale of the property adjudicated to the People's Bank has never been passed, and that he alone has the authority to distribute the proceeds of that sale.

The opponent opposes all the other items of the account and demands proof in support of each.

Recurring to the adjudication to the bank, the proof is unquestioned that the property was adjudicated as alleged. This adjudication conveys title without any subsequent deed. Lane vs. Cameron, 36 An. 773.

In the case cited by appellant of Collins vs. Demorest, 45 An. p. 108, there was not a completed adjudication and specific compliance with the terms of sale on the part of the adjudicatee, as was done in the case at bar.

On this branch of the case, the District Court rightly and tersely says:

" As to all the proceeds realized, except $1483.23, distribution had been made prior to the interdict's death; all the mortgages, in their order according to their rank, being paid in the execution and completion of that sale itself.

" The late curator's account only recites this fact and states the amount that had thus been paid. He has not distributed, nor is he seeking to distribute. The order of sale was to pay these very mortgage debts. By order anteceding the sale, the mortgagees and

claimants were referred to the proceeds of the sale when made, that inscriptions might be erased and the title pass free to the purchaser. At the sale the People's Bank bid and paid, as herein above recited, and so of the other purchaser at the other sale.

"Ranking claims were paid in cash, the compensation did its work, authorizing retention *pro tanto*, and the remaining surplus was paid over to the curator's hands, all before the interdict's death."

The curator's account of the proceeds of sale is correct, and therefore the opposition against this adjudication was not well taken.

The account of the curator was due to the court. Succession of Webre, 36 An. 813.

The mode of rendering the account is similar to that followed by the tutor in rendering an account to his ward. C. C. 415.

That mode has been followed in this case. He accounts to the court and through the court to the executor.

The remaining grounds for decision are that the distribution of the proceeds could not legally be made by the curator, but only by the opponent as executor.

The interdict died on April 25, 1892, and opponent, Hart, became executor of the succession.

Regarding the executor and the adjudication to the People's Bank we agree with the court *a qua* in the statement, and further quote from its decision, that " it may not amount to a full estoppel, but it goes far in that direction, that the gentleman who, as executor, took the rule on the bank was the gentleman who, as representative of the ranking special mortgages, received, before the interdict's death, from said bank, as purchaser and adjudicatee, at said auction sale, $13,630.20 of the total price bid and paid, say $21,000. I take it, that he has, as executor, taken this rule as a matter of precaution for his own security in his said trust, which is proper."

Passing from the adjudication of the property of the interdict to the other grounds of opposition:

The records do not disclose any attempt at unfairness on the part of the curator.

The payment of certain debts contracted by him during the existence of the interdict, after the death of his principal, will not meet with approval nor commend itself as proper in settling the affairs of which he had charge under the appointment of the court.

As a practical question, in the present case, it would not serve any useful purpose to have these payments recalled in order that they may be carried in the account of another administration.

It is not alleged that the heirs or the creditors are affected by the mode of settlement followed.

The argument of the opponent is that the curator's authority ceased at the death of the interdict, and that it was then his duty to pay over to the executor amounts in his hands.

Technically the executor represented the succession, and should have delivered the funds as contended.

This alone does not offer sufficient grounds to set aside these payments.

But they must be proven correct by him, and in the event of his failure he becomes responsible.

This is the penalty to which he has exposed himself.

It is in place to state that none of the debts paid by him were contracted after the death of the interdict.

The judge of the first instance has approved the account as presented by the curator.

This court has decided that the acknowledgment and payment of debts by tutors and curators which they knew to be owing by the estate which they administer are *prima facie* evidence of their correctness.    Kilgour vs. Ratcliff's Heirs, 2 Mart. N. S. 298;  Baillis vs. Wilson, 6 Mart. N. S. 335;  Succession of Franklin, 3 R. 287.

An appearance of good faith and good management in the settlement of accounts are important considerations, and relieve to some extent from the necessity of having witnesses to the various transactions.

The accountant thus protected is not obliged to prove the signature of every receipt for needful expenses and debts paid.

Proof of every item, however small and correct, from the mere statement, would involve the estate in heavy and useless expense. Succession of Bauman, 30 An. 1138.

Applying this rule in proving up the curator's account in this case, the judgment appealed from is affirmed as to all the items, except the following:

The item of $436.55 carried on the account as " amount paid by J. A. Newsham, gardener, for preserving property."

This item, to the curator's credit, may be correct.

State ex rel. Violett et al. vs. Judge.

The executor opposes it, on the ground that it is not supported by any evidence.

The item for attorney's fee, $1820, is equally unsupported by evidence.

The entry on the account is all that appears in support.

Being opposed they should be proven up contradictorily with the executor.

The curator credits himself with $660.93, his own commission as executor.

It is stated in the account that it is 2 1-2 per cent. commission on the amount of the inventory.

No commission is charged upon the revenues. The claim for this commission will not be passed upon at this time.

Before passing upon it, it is proper to ascertain whether there was any productive property forming part of the estate.

Any right to recover the three items just mentioned is reserved.

It is therefore ordered, adjudged and decreed that the judgment appealed from be affirmed in all respects except in so far as relates to the items carried in the account as having been paid by Newsham, viz.: $436,55; attorney's fees, $1820; curator's commissions, $660.93. As to these three items the case is remanded for a new trial.

Appellee to pay costs of appeal.