No. 636

First Circuit

COLLIGAN v. BENOIT

(June 9, 1930. Opinion and Decree.)

Medlenka, Bruner & Chambers, of Crowley, attorneys for plaintiff, appellee.

H. Gordon Brunson and W. J. Carmouche, of Crowley, attorneys for defendant, appellant.

MOUTON, J. Plaintiff bought at sheriff's sale, May 11, 1929, a tract of 146 arpents of land situated near Church Point, Acadia parish.

He alleges that after his purchase he informed defendant, Benoit, who was farming a part of the land, that he had bought it at public sale, and told Benoit he would allow him to continue his planting operations for the current year, provided Benoit paid him the customary share of all crops raised by him, being one-third of all cotton produced on the land, divided at the gin; one-third of all corn and one-fourth of all sweet potatoes. He further avers that defendant produced and gathered about eight bales of cotton on the land which had been stored by him on the premises, that there was also on the land from four to six bales of unpicked cotton, making a total of twelve to fourteen bales of cotton, to a third of which he was entitled, approximating in value, with the seed, $600, and that defendant refused to pay the rent for the current year. Averring his fear that defendant would remove the cotton from the premises and would sell it to his prejudice, he obtained the issuance of a writ of provisional seizure under which the sheriff of Acadia seized on the premises the following property: Four bales of loose cotton in a barn, two bales in the field, not picked, with some corn and sweet potatoes. Six bales of cotton were also seized in Eunice, St. Landry parish, by the sheriff of that parish.

September 9, 1929, defendant came into court by motion for the purpose of bonding the property seized which was released to him under order of court, on a bond furnished by defendant with surety, on the same date. In the motion before asking for the bond, defendant alleged that he came into court, through his counsel,

"with full reservation of all of his rights and particularly of his right under the exception of want of citation which has been filed herein." There was, at that time, no exception of want of citation filed in the case.

Twenty days later, defendant filed an exception on the ground that the citation served on him did not have the seal of the court by whose order it was given. The exception to the legality of the citation was therefore filed, after the motion for the bond had been made and the bond furnished. The reference in the motion for the bond, to an exception to the citation which had not then been filed, could have no legal effect.

It was held in Rathbone vs. The London, 6 La. Ann. 439; Williams vs. Gilkeson-Sloss Commission Co., 45 La. Ann. 1013, 13 So. 394, and other decisions, that the appearance of defendant to obtain a forthcoming bond, and the execution of the bond with delivery of the property attached, effected a waiver of a defect or want of citation. This right to bond and have the property released from seizure is given a defendant in attachment proceedings under article 259, Code Prac.

The argument of counsel for defendant, if we properly appreciate it, is that the provisions of that article refer to attachment proceedings against non-residents where service is made upon them through curators ad hoc. We find nothing in that article which restricts its operation to non-residents nor in the following articles. As we read its provisions, the right is conferred indiscriminately on defendants in all attachment suits. It is true that in several cases upon which the Supreme Court has passed on this question the defendants appearing therein were non-residents and were proceeded against in attachment suits.

In the case of Hollingsworth vs. Atkins, 46 Ann. 515, 15 So. 77, 78, a citation had been addressed to the defendant partnership, not a commercial partnership, in which a writ of provisional seizure was issued. One of the partners excepted on the ground that he had not been cited, as the citation had been addressed to the partnership. In that case there was no non-resident defendant brought in by attachment. The defendants had, however, in the name of the partnership, applied for and executed a forthcoming bond, and, as in this case, had obtained possession of the property by provisional seizure. The court held that there was an appearance made in the case, by the act of bonding, that defendants had taken possession of the property, which "cured any defects of citation, or the absolute want of citation."

In this case, the lack of the seal of the court on the citation in question constituted a defect of citation or was equivalent to a want of citation. In either case, such defect or want of citation was cured by the appearance of defendant to bond, his furnishing the bond, with delivery of the property to him.

Article 259, Code Prac., which permits defendant to have the property released, says that he will furnish a bond obligating himself to "satisfy such judgment, to the value of the property attached, as may be rendered against him in the suit pending." The bond furnished here provides for the same liability should defendant fail to restore the property released to him if so decreed. The very stipulation of the bond that he will satisfy such judgment as may be rendered in the suit pending implies that he takes the property subject to the

action of the court in the case. The exception was properly overruled.

Defendant then filed an exception of no cause of action asking for the dismissal of the suit, and the provisional seizure.

The petition alleges, in substance, that plaintiff had bought the land at public sale, that he had informed defendant that he would allow him to continue his planting operations for the current year, provided he was paid his share therein, as hereinabove stated; that defendant had produced and gathered about twelve or fourteen bales of cotton, and had refused to pay his rent.

The contention of defendant is that plaintiff did not allege defendant had consented or agreed to the statement made in the petition, there was therefore no lease alleged, and no basis for the writ of provisional seizure.

Plaintiff having alleged that he made the purchase on May 11, 1929, and having told defendant that he could continue his planting operations, it must be assumed that there was at that time a growing crop on the land, and which was the property of the plaintiff, under his allegations which must be taken as true under the exception of no cause of action. He further alleges that defendant made and gathered a crop of about twelve or fourteen bales of cotton. Defendant must therefore have continued his planting operations, otherwise he could not have made the crop. Although plaintiff did not allege that defendant had expressly assented to his requirements, but as defendant continued to farm the land, it must be assumed that by implied assent defendant agreed to the conditions of giving plaintiff the share of the crop for which, plaintiff alleges, defendant was permitted to continue his planting operations, and has refused to pay the rent. As a party may be bound to a contract by his implied, as well as by his express, assent or consent, we think that plaintiff has set out a cause of action, and that the exception of no cause of action was properly overruled, and that the dismissal of the provisional seizure was correctly denied.

## MERITS

In his answer defendant avers that the sale by which plaintiff acquired the land is null, and prays that it be decreed null and of no effect. It is doubtful that he could thus collaterally attack the validity of the sale, but, however this may be, defendant merely alleges that he has an equity in the land, but does not ask that this equity be recognized or that title be decreed in his favor to the property by virtue of which he could have asserted his ownership to the crop. He does not contend that title is in some other party than plaintiff which could have raised an issue as to plaintiff's right of action against him. The real issue presented, and as to which most of the evidence has reference, is as to whether plaintiff was defendant's lessor, and defendant his tenant, on the share basis alleged in the petition.

"Standing crops (etc.) are considered as part of the land to which they are attached." Civ. Code, art. 465.

The adjudication at sheriff's sale carries to the purchaser the immovable, its appurtenances, including fruits, pending the seizure, etc. Frank vs. Magee, 50 La. Ann. 1066, 23 So. 939.

Plaintiff therefore became the owner of the crop on the land by reason of the adjudication. Plaintiff testifies that, after he bought the property, he told defendant that he would owe him one-third of the cotton and corn and one-fourth of the sweet potatoes. He says defendant answered he would have to "see his lawyer for that."

Defendant says that after the sale he stated to plaintiff he would have to see his lawyer for the share he was claiming. Referring plaintiff to his lawyer was somewhat of an indirect denial of his obligation to give a share of the crop which plaintiff was asking, and which the evidence shows was customarily accorded to owners by tenants of land on shares.

The fact is, however, that defendant did not deny that plaintiff had told him, after his purchase, that he would have to pay him his proportionate share of the crop he might make on the farm. The fact is also that, though plaintiff had demanded this share, defendant remained on the farm, continued to cultivate the crop, and finally gathered five bales of cotton, leaving on the premises four or five more loose bales, with corn and potatoes. This conduct of defendant, after plaintiff had stated his terms, shows that defendant had impliedly assented thereto.

Edward Daigle, a merchant of Church Point, had made advances to defendant, and had an interest in the crop he was making on the place, which had been advertised for sale. He says defendant said he knew it had been advertised and he would buy it back if he could. Daigle says he told defendant he was going to see plaintiff, and see if he would not allow defendant to finish the crop; that plaintiff told him Benoit could stay on the place, provided he gave him his share of the crop; that he so reported to defendant, who expressed his willingness to pay plaintiff his share. There is nothing to indicate that Daigle has any interest in this suit one way or the other.

The district judge, no doubt, believed he was telling what actually occurred. There is no doubt that defendant by continuing his planting operations had impliedly assented to the terms stipulated by plaintiff, the owner of the crop, and that by his statement to Daigle, that he would give his share of the crop, was merely confirming his implied agreement with plaintiff to pay the customary share to the owner for the cultivation of his land.

The statement of defendant to Daigle that he knew the property was for sale, and that he would buy if he could, and, subsequently, that he would pay his share of the crop to plaintiff, shows that he was not claiming as owner, though it may be true that he had an equitable right in the property as it was by him alleged in his answer, but not demanded or prayed for.

It is true that, without authority, the sheriff of St. Landry had seized five bales of cotton in that parish, but the court dissolved the writ in that respect, and perpetuated it on the part of the crop seized on the premises in Acadia parish, ordering it sold, the proceeds of sale to be applied to the satisfaction of plaintiff's claim—in which we find no error.