## HEATH v. SUBURBAN BUILDING & LOAN ASS'N et al.*

### No. 15036.

Court of Appeal of Louisiana. Orleans.
Oct. 7, 1935.

*Rehearing denied Nov. 4, 1935.

Blasi· & Sehrt and Jos. F. Blasi, Jr., all of New Orleans, for appellant.

Spearing & McClendon, of New Orleans, for appellees.

LECHE, Judge.

Plaintiff, Mrs. Jennie Layrisson Heath, is a married woman living with her husband. She sustained injuries in two accidents, each of which, she alleges, resulted from the defective condition of the house in which she and her husband resided. In her original petition she avers that she and her husband leased the premises on February 10, 1933, from the then owner, L. R. Terrio, that, as the result of foreclosure proceedings, the property was, on May 4, 1933, adjudicated at sheriff's sale to Suburban Building & Loan Association, and that on May 17, 1933, the Suburban Building & Loan Association accepted title to the said property and that the sheriff's deed was dated on that day. She alleges that in the meantime the two accidents referred to had occurred, one on May 10th and one on May 11th, and that,' as the result of the adjudication, Suburban Building & Loan Association had on May 4th become the owner of the property, and is therefore liable to her for the damage sustained as a result of the two said injuries, which injuries she maintains resulted from the defective condition of the premises.

The contention of Suburban Building & Loan Association, which is the sole defendant remaining in the case, is that on May 10th and on May 11th, when the accidents occurred, it was not the owner of the said premises, and Mrs. Heath was not its tenant, and that therefore it is not liable to her because the accidents could not have resulted from negligence on its part, the defects in the premises, if there were defects, resulting from the negligence of the former owner, and being defects which it (Suburban Building & Loan Association) could not have remedied because it had not at that time obtained possession of the property.

In the district court there was judgment dismissing plaintiff's suit; the judge a quo having reached the conclusion that the first accident resulted from contributory negligence on the part of plaintiff and that at the time of the second accident defendant Suburban Building & Loan Association "did not have control of the property because title had. not passed."

A review of the pleadings is important. In the original petition, as we have stated, plaintiff alleged that she and her husband were originally tenants of the former owner, and she further alleged that, by reason of the adjudication, Suburban Building & Loan Association became the owner and lessor, and that therefore she and her husband automatically became lessees of said Suburban Building & Loan Association. In the original petition judgment was prayed for against both Terrio, the original owner, and the building and loan association. To this petition the building and loan association filed exceptions of misjoinder and of no cause of action. Terrio, the other defendant, filed similar exceptions. The exception of no cause of action filed by Terrio was sustained, and the suit was dismissed as against him, and there has been no appeal. Thus he is entirely out of the case. Both exceptions filed by the building and loan association were sustained and the suit ordered dismissed as to it, but a rule for a new trial was made absolute and a new trial granted as against the building and loan association. Thereupon the court again undertook to pass upon the exceptions of misjoinder and of no cause of action; and rendered judgment overruling the exception of misjoinder and sustaining the exception of no cause of action, with leave, however, in petitioner to amend so that she might set forth her true status, whether as tenant of the building and loan association or as licensee. In a supplemental petition plaintiff enlarged somewhat the allegations of her original petition as to her status, and finally made the averment that she and her husband "were the licensees of the said Suburban Building & Loan Association."

However, since the supplemental petition contained other allegations which might have been considered as inconsistent with this and which might have been construed

as averments that she and her husband were the tenants of the said association, a further exception was filed through which it was sought to force the said plaintiff to declare unequivocally whether she intended to proceed as a licensee of the building and loan association or as its tenant, and thereupon, by interlineation, petitioner was permitted to amend her petition by adding the following words: "Petitioner is claiming solely as a licensee."

Since both accidents occurred between May 4th, the day on which the property was adjudicated, and May 17th, the day on which the sheriff's deed was executed and registered, we see no reason to investigate the facts as to either accident, unless we shall first determine that during that period the status of the defendant association was such as to render it liable to petitioner in any event and however defective the premises may have been during that period.

Counsel for both parties devote much thought to the question of whether a purchaser at judicial sale becomes vested with title at the moment of adjudication. It is the contention of plaintiff that title passes at that moment, and, in support of this view, we find cited several codal articles and many adjudicated cases. Civil Code, art. 2608, reads as follows: "This adjudication is the completion of the sale; the purchaser becomes the owner of the article adjudged, and the contract is, from that time, subjected to the same rules which govern the ordinary contract of sale."

The article of the Code of Practice which is in point is 690. We find it there provided that: "The adjudication thus made has, of itself alone, the effect of transferring to the purchaser all the rights and claims which the party in whose hands it was seized might have had to the thing adjudged."

It is further required that the sheriff shall execute a deed, but by article 695 of the Code of Practice it is provided that: "This act of sale adds nothing to the force and effect of the adjudication, but is only intended to afford the proof of it. Consequently, if the sheriff has omitted any of the formalities above prescribed, the adjudication shall not be void on that account, if it otherwise appear that it was made by virtue of a legal authority, and with all the forms requisite for its validity."

The adjudicated cases are numerous. In King v. Hacket, 7 Orleans App. 497, this court said: "The rights of the parties are fixed by the adjudication at public auction and not by the notarial act of sale subsequently passed in confirmation of the adjudication."

In Interdiction of Onorato, 46 La. Ann. 73, 14 So. 299, the Supreme Court said: "The adjudication of property at a judicial sale is itself a complete title, which cannot be divested unless the purchaser refuses to comply with the terms."

There are many others to the same effect. It is also well settled that the fruits of the property belong to the purchaser from the moment of adjudication. Frank v. Magee, 50 La. Ann. 1066, 23 So. 939; Colligan v. Benoit, 13 La. App. 612, 128 So. 688; Shreveport Long Leaf Lumber Co. v. T. R. Hughes, 1 La. App. 706.

Defendant does not deny this, but asserts that, since a purchaser at judicial sale is entitled to a reasonable time for investigation of title and to comply with his obligation by paying the purchase price, and since, until he has paid the price and has agreed to accept title, he cannot exercise any act of ownership with reference to the property, he cannot be held liable for damage caused by the defective condition of the property until he has actually accepted the title and paid the purchase price. As supporting this view, the following adjudicated cases are relied upon: Nichols v. Bryan, 143 La. 291, 78 So. 562; Capital Bldg. & Loan Ass'n v. Northern Ins. Co., 166 La. 179, 116 So. 843; Martinez v. Fouche, 2 McGloin, 130; Hyman v. Bailey, 13 La. Ann. 450; Clarkston v. Vincent, 32 La. Ann. 613; Fontelieu v. Fontelieu, 116 La. 866, 41 So. 120. Counsel also call attention to Act No. 113 of 1906 and to article 2610 of the Civil Code, both of which, they contend, force the conclusion that title does not pass until the execution of the deed, and that prior thereto there can be no liability as owner.

All of the cases cited by counsel for defendant involve situations in which the adjudicatee refused to accept title or to pay the purchase price, and necessarily in each of them the court held that, where the bid price is not paid and there is no consummation of the sale by deed evidencing it, necessarily the adjudication did not have the effect of transferring title. We believe that the proper rule is, as stated in Frierson v. New York Life Ins. Co., 174 La. 1037, 142 So. 256, 258, that: "The purchaser at a judicial sale acquires such a vested right in the property by the adjudication

that it cannot be taken from him unless he refuses to comply with the terms of the sale. But, if the purchaser refuses to comply with the terms, he is considered as never having been the owner, saving to the vendor his right to compel a specific performance of the contract."

And we also believe that for all practical purposes, where the adjudication is followed by the acceptance of title and payment of the purchase price, then the execution of the deed may be said to revert back to the moment of adjudication, and that the effect is that the adjudicatee must be considered as having been the owner from the moment of adjudication.

But it is the status of plaintiff with which we are most concerned. She has designated herself as a licensee. She has abandoned her claim that her relationship was that of tenant.

It is strenuously argued by counsel for plaintiff that we should disregard the allegations of the supplemental petition to the effect that plaintiff is a licensee and that we should treat those averments merely as conclusions of law and that we should find, as a matter of fact, that plaintiff was a tenant. But we are unable to do so. Whether or not plaintiff was a tenant is a question of fact; that is to say, the determination of that question depends upon facts, and, since there were in the petition allegations which may be construed as declaring that plaintiff was a tenant and also specific allegations that plaintiff was a licensee, it was proper that the court, on motion, should have required plaintiff to declare under which state of facts she intended to proceed. As a matter of fact, her ultimate conclusion and final statement that she was proceeding as a licensee might well have been based on her realization of the fact that her first allegation that she and her husband were joint tenants was erroneous. It is unusual, as a matter of fact, for a man and his wife both to execute a lease as lessees. It is customary, on the contrary, that the lease be executed by the husband, and, if the lease is executed by the husband, then, under well-established jurisprudence, the wife does not occupy the status of tenant. This has been definitely decided, though the decisions have been to some extent criticized.

In Ciaccio v. Carbajal, 142 La. 125, 126, 76 So. 583, our Supreme Court very definitely decided that, where the husband is the tenant, the wife is not bound by any of the conditions of the lease nor by any of the legal effects which flow from a lease, and, in Levi v. Crescent City Seltzer & Mineral Water Co., Inc., 2 La. App. 286, this court said that a wife of a tenant was not entitled to any of the rights flowing from articles 2692–2695 of the Civil Code concerning correlative obligations between landlords and tenants, for the reason that she was not a tenant, since she had stated in her petition "that the premises had been 'leased by her husband.'" That the rights of a wife are not affected either favorably or adversely by the lease between her husband and the landlord also appears from an opinion written by Judge E. D. Saunders of the United States Circuit Court for the Eastern District of Louisiana in Frank v. Suthon, 159 F. 174, 182, in which appears the following: "The wife of the tenant is not debarred from recovering by reason of the fact that her husband is the tenant. His tenancy creates no contractual relations of any kind between her and the owner."

That this doctrine has been definitely established is shown by the fact that it has been much criticized in an article entitled: "Landlord and Tenant—Defective Premises—Action by Tenant's Wife," appearing in Southern Law Quarterly, vol. 3, at page 67. Since, then, the wife of a tenant is not a tenant, it may well be that the final allegation of plaintiff that she was a licensee may be considered as an allegation of fact that it was her husband who had leased the property and not she herself. We look upon her, not as a tenant, but as a licensee, and therefore find it necessary to investigate the jurisprudence concerning the distinction between the contractual obligation of a landlord to his tenant and the statutory obligation of an owner to a licensee.

The obligation of the owner to her as a licensee was vastly different from what it would have been had she been a tenant. Assuming, then, that the contention that the building and loan association was owner of the premises on May 10th and May 11th is sound, we must also assume that on those days plaintiff's status was that of licensee, because she has so alleged.

Much confusion has arisen in this state on this point. For instance, in an article entitled: "Liability of Lessor or Property Owner to Third Persons for Accidental Personal Injury caused by Defective Premises," appearing in Tulane Law Review,

vol. 4, p. 611, the author, after carefully pointing out the clear distinction expressly appearing in the codal articles on the subject, concludes with a statement to the effect that, though there is a difference in the codal provisions, the courts have failed to recognize the distinction. He first refers to article 2695 of our Civil Code, which reads as follows: "The lessor guarantees the lessee against all the vices and defects of the thing, which may prevent its being used even in case it should appear he knew nothing of the existence of such vices and defects, at the time the lease was made, and even if they have arisen since, provided they do not arise from the fault of the lessee; and if any loss should result to the lessee from the vices and defects, the lessor shall be bound to indemnify him for the same."

He then states:

"This article clearly and expressly applies only as between the landlord and tenant, and it seems illogical and unjust to extend its scope to third persons not privy to the contract of lease, and not affected by any limitations of the landlord's liability contained in the contract of lease. The liability of the landlord to third persons is deemed to arise ex delicto, but the phase of that liability which makes the property owner a guarantor against vices or defects not due to his fault or negligence is improperly borrowed from the lessor's contractual warranty against vices and defects resulting from the provisions of Art. 2695 of the Civil Code.

"Be that as it may, this rule of absolute liability seems to be too firmly embedded in the jurisprudence of Louisiana to be altered by the courts. It will require an act of the legislature to change it."

See, also, "Landlord & Tenant—Defective Premises—Actions by Tenant's Wife," Southern Law Quarterly, vol. 3, p. 214.

■ There is much in the reported jurisprudence of this state to warrant the views expressed by the authors of the two articles referred to and to lead to the conclusion that our courts have failed, in some instances, to notice the distinction between the liability of the owner to a tenant and the liability of such owner to a third person rightfully on the premises. But on the other hand there is other jurisprudence— later, and, we believe, more soundly based on the codal provisions—which shows rather plainly that the distinction referred to has been recognized and that, as a matter of fact, there is in this state no liability in an owner or property for damage caused to a licensee by the defective condition of the property unless the defective condition has resulted from the negligence or neglect of the owner, or unless, as expressed in article 2322 of the Civil Code, "It is the result of a vice in its original construction." In Hanover v. Brady, 148 So. 267, 268, we attempted, in the light of the Supreme Court's decision in Klein v. Young, 163 La. 59, 111 So. 495, to point out the distinction under discussion and said:

"Many have been led to believe that there is no difference between the obligation due by a landlord to a tenant and that owed by a property owner to any one lawfully on the property or to a passerby. In fact, an opinion which is usually cited as authority for the view that there is no distinction between the duty of a landlord to his tenant and that of a property owner to a passerby or licensee, though the point was not necessary to the decision of the case, in reality, points out the distinction between these two duties. We refer to Klein v. Young, 163 La. 59, 111 So. 495, 497, in which the court said that the duty of a landlord to his tenant results from the fact that into every contract of lease is written by law the obligation imposed by articles 2693–2695 of the Civil Code, in which articles the landlord is held to warrant to the tenant the safe condition of the building. It is provided in article 2695 that 'The lessor guarantees the lessee against all the vices and defects of the thing,' * * * and that 'if any loss should result to the lessee from the vices and defects, the lessor shall be bound to indemnify him for the same.' But, says the court in the Klein Case, this 'obligation is in favor of the lessee only.' The obligation to which the court refers is the obligation to guarantee the lessee against injury whether the injury results from neglect of the owner or not. The court then points out that the obligation due by a property owner to a licensee or to a passerby results, not from articles 2693–2695, but from articles 670 and 2322. Now, under both of these articles, 670 and 2322, liability of the owner to a licensee or passerby is limited to cases in which the damage results from neglect to make repairs, unless, under article 2322, the damage results from a vice or defect in the original construction of the building. In other words, to quote again from Klein v. Young, supra: 'Article 670 makes every owner of a building liable in

damages to any neighbor or passer-by who is injured by the fall of any part of the building, through negligence on the part of the owner to keep his building in repair. Article 2322 makes every owner of a building answerable in damages to any person who is injured—either while rightfully inside or while outside of the building—by an accident resulting either from the owner's neglect to repair the building or from a vice or defect in its original construction.'

"The wording of the various articles which we are now discussing and the language used by the Supreme Court in the many decisions which are pertinent force the conclusion that there is a distinction between the liability of a landlord to a tenant and the liability of a house owner to a licensee or passerby."

It seems, then, that in accordance with the current jurisprudence in this state there is no liability to a licensee unless there was negligence on the part of the owner, or unless the damage can be shown to have occurred as the result of a vice in original construction.

Here the allegations show plainly that the defects were not vices in the original construction, and thus it follows that, if there is liability, it can only be because the defects resulted from negligence on the part of the owner.

It is true that our courts have construed the obligation of the owner as being so broad that, as we said in Hanover v. Brady, supra: "Although the liability of the house owner to a licensee or passerby is made to depend upon negligence, the mere fact that the building is defective is in itself proof of that negligence, and this, whether the defect is apparent and easily discoverable, or is such as would not be noticed except upon careful inspection."

However, it has never been held, so far as we are able to ascertain, that the presumption of negligence is absolute and that it will not yield to positive proof. It has been many times held in this state that liability ex delicto cannot exist without fault. This was clearly enunciated recently in the case of Johnson v. Butterworth, 180 La. 586, 157 So. 121.

Counsel for both parties direct our attention to Lincoln v. Appalachian Corporation, 146 La. 23, 83 So. 364, 366, 7 A. L. R. 1697, and to the companion case, Appalachian Corporation v. Brooklyn Cooperage Co., 151 La. 41, 42, 91 So. 539. On behalf of plaintiff it is contended that these cases are authority for the proposition that before an owner of property actually takes possession he may become liable for injuries sustained as a result of the defective property. On behalf of defendant it is contended, on the contrary, that the cases are authority for the view that there can be no liability without fault and that there can be no fault as a result of a physical defect in real property unless there has been an opportunity to repair the defect. An understanding of the cases is necessary. Lincoln, an employee, was injured while working on property belonging to the Appalachian Corporation, but which had formerly belonged to the Brooklyn Cooperage Company and which latter corporation remained in physical charge of the property. The Supreme Court held in the Lincoln Case, which was the first of the two, that Lincoln was entitled to recover from the owners of the property, Appalachian Corporation, though that corporation had not physically taken over the property from the former owner. But there are two important facts which distinguish that case from the case at bar. In the first place, the Supreme Court held that Lincoln, as to the Appalachian Corporation, occupied a status very similar to that of employee. Note the following language: "Plaintiff was not the employee of the defendant, in the strict sense; he having been employed, as above indicated, by the Boylan Detective Agency, who held the watching of the building under contract. But its duty to him, in providing proper tools and appliances, and in furnishing a safe place to perform his duties, was for all practical purposes the same as if he had been an employee."

The other distinguishing feature is that in the Lincoln Case, although the Appalachian Corporation had not physically taken charge of the property, it had become the record owner thereof and there was nothing more to be done to complete its ownership and to perfect its title to the property. On this point the court said: "It is true that defendant had only acquired the property a few days prior to the accident, but it is not disputed that its legal relation to the matter is the same as would have been that of the Brooklyn Cooperage Company, had the building not been sold."

In the case at bar the building and loan association had a right to the property, which right could be converted into actual ownership upon the acceptance of title, but at the time of the accidents in question it had not actually taken title, and therefore

it had not the status which was occupied by the Appalachian Corporation in the Lincoln Case.

In the second of the cases referred to, Appalachian Corporation v. Brooklyn Cooperage Co., the Supreme Court indicates that, had the new owner not become vested with title, it could not have been said to be at fault.

It cannot be said to be negligence to fail to do that which cannot physically be done. The building and loan association had not the physical power nor the legal right to enter upon the premises and to make repairs. It therefore was not negligence on its part to fail to make those repairs. In Toullier, vol. 2, par. 262, is found the following: " * * * no one is held to the impossible. We cannot impute to any one his failure to do a thing which was not within his power; it is an axiom of eternal youth."

We find nothing in our statutes, codes, or adjudicated cases which prohibit the application of that principle to such a case as this. It was impossible for defendant to have remedied any defects which may have existed without first accepting title and paying the purchase price. It was within its rights in not accepting title until it had a reasonable time for investigation, and therefore it cannot be said that it was negligence on its part not to have entered on the premises for the purpose of making repairs; it had no right to do so. To hold it liable for those accidents would be to hold it liable without fault on its part. This we cannot do. Since the petitions show that plaintiff was a licensee, and since they also show that at that time defendant could not have been at fault, and since it is necessary, if there is to be recovery by a licensee, that fault must be shown, it follows that no cause of action is stated in the petitions.

In oral argument considerable time was devoted to the question of whether or not plaintiff should have been permitted to amend her petition. It is not necessary that we consider this question, because we have reached the conclusion that the exception of no cause of action directed at both of the petitions after the filing of the last one should be sustained.

The judgment appealed from is affirmed, at the cost of appellant.

Affirmed.