The plaintiff, alleging that on November 26, 1940, while she was a tenant of defendant, Julius H. Meyer, in the premises No. 2503 Freret Street in New Orleans, she was injured by the fall of plaster from the ceiling of one of the rooms, brings this suit against defendant, as lessor and owner, and prays for judgment against him for $212.80. Though, in the body of her petition, she fixes her claim for damages in the sum of $262.80, which she itemizes to be $200 for her physical injuries, $50 for nervous and mental shock, and $12.80 for physician's treatment and drugs, the prayer of the petition, which is controlling, fixes the total demand at $212.80.
In due course, the defendant answered, admitted the ownership of the building, but denied that plaintiff was a tenant therein. He specially denies the accident complained of or that the injuries alleged resulted from defects or vices in the building, and for further answer, avers that, if there was such an accident, it was attributable to a high windstorm, an Act of God, which absolves him from liability. *West Page 785 
There was judgment below in favor of defendant and plaintiff has prosecuted this appeal.
We may at this time dispose of defendant's denial of his relationship of landlord and tenant with plaintiff, because, as we have said in several recent cases, whether plaintiff was a tenant is of no importance. If her occupancy of the premises at the time of the accident was either as that of a tenant, or because of the right of occupancy of her mother and sister, Cora Mundy and Anita Wallace respectively, with whom she lived, and she was injured because of a defect in the building, defendant would be liable. If she was a tenant, defendant would be liable as a result of the obligations placed upon him by articles 2692-2695 of the Civil Code. If she was a third person, defendant's liability, as owner of the premises, would result because of the effect of Articles 670 and 2322 of the Civil Code.
Our holding in Hughes et al. v. Abate, 2 So.2d 68, 69, is as follows:
"* * * Here, even if we could treat Elnora Hughes as not being a tenant, but only a third person rightfully on the premises, still she could hold Mrs. Abate liable — not under Articles 2692-2695, but under either Article 670 or 2322, for, under both of these articles an owner is rendered liable for an accident which has resulted from failure to keep his building in repair and, under the latter article, he is liable where an accident results from a defect in the building which `is the result of a vice in its original construction'. To state the matter very simply, an owner is liable to any person rightfully on or near the premises if, because of a defect, that person, being himself, without fault, is injured. Klein v. Young, 163 La. 59,111 So. 495; Heath v. Suburban Building Loan Association, La.App., 163 So. 546; Tesoro v. Abate, La.App., 173 So. 196; Morris v. Hava, La.App., 180 So. 216."
There is, then, only one question which is presented, and that is one of fact, i.e., was there such an accident as charged, resulting in the injuries complained of.
In order to substantiate the averments of her petition, the plaintiff tendered the testimony of herself, her mother, and Dr. Richard P. Williams.
The plaintiff testified that, on the night of November 26, 1940, at about 2 o'clock, while asleep, a portion of the ceiling plaster, which is described to be about fifteen to eighteen inches in diameter, fell upon her, striking her on the side of her forehead, her right arm and back. She says that the violent shock of being thus aroused perplexed her and that, in her excitement, she inhaled dust caused by the falling plaster and that this produced an inflammation of her throat membranes and bronchial tubes. She further states that, as a result of this inflammation, whenever she expectorated or cleared her nasal passages, there were traces of blood, this condition lasting a period of two or three days. She further relates that, on the morning following the accident, she was treated at the offices of Dr. Richard P. Williams, who thereafter treated her on three subsequent occasions and who had prescribed that she remain in bed; that, observing these instructions, she remained in bed a period of thirteen days.
Plaintiff's mother testifies that she was in a rear room, asleep at the time of the accident, and, on being awakened by the noise of the falling plaster, she ran to her daughter's bedroom, saw broken plaster on the bed and floor and the room filled with dust. She further relates that she placed plaintiff in bed in another room, and, during the early morning hours, telephoned the defendant. As to the extent of plaintiff's injuries, she elaborates upon the shock and suffering which the plaintiff claims to have endured.
Dr. Richard P. Williams testified for the plaintiff and said that she called at his offices on the morning of the accident and that he found her suffering from a slight swelling of the right temple and a bruise on the arm; that he did not actually see her expectorate blood, or any bleeding from her nostrils, his statement on that issue being solely plaintiff's complaint; that his first examination disclosed no inflammation of the throat; that he prescribed an ointment to alleviate the swelling and pain, and that he either visited plaintiff, or had her call at his offices, three or four times thereafter, for which he rendered a bill for $9.
Dr. P.L. Danna testified for defendant and said that he called at plaintiff's home two days following the accident; that he found her in bed, complaining of nervousness and pains in the head, arm and back; that she did not complain of any inflammatory throat or bronchial condition, and *West Page 786 
that, on examining her, he found no evidence of injury, bruises or contusions.
Edward De Armas, an architect, testified that he had inspected the premises one year previous and found the residence in an excellent state of maintenance, save needed exterior and interior painting; that broken particles of plaster, which are in evidence, gave the appearance of having been sounded, or tested by some instrument. He admits, however, that this observation is only "a guess" and said that the marks may have been caused when the failing plaster struck the window sill, bed or floor.
Defendant testified that on the morning of the accident, he received a telephone call, informing him of the accident; that he called at the home of Mose Davis, his regular plasterer, and both went to the premises; that, on entering the room which plaintiff occupied, he saw pieces of broken plaster on the floor, which he placed in a container, and that there was a hole in the ceiling about fifteen inches in diameter. The ceiling of the room was then completely replastered. His testimony is fully corroborated by the plasterer.
Generally, in cases involving injuries to tenants by reason of vices and defects existing in the lessor's premises, the only eye-witnesses are the plaintiff and his witnesses, and for that reason, we are compelled to rely upon plaintiff's evidence. As a consequence, we should carefully scrutinize it to avert results which might unduly encourage the prosecution of fictitious claims.
We are likewise not unmindful of the well-settled rule that we should not reverse a judgment, based entirely on questions of fact, unless it is manifestly erroneous, again making it imperative that we determine that the facts and other circumstances shown by the record are of sufficient probative force to justify the conclusion that the court, a qua, was obviously in error.
We fail to find any conflict in plaintiff's evidence and that of the other witnesses in substantiation of the occurrence of the accident which would justify us to doubt the sincerity of her claim. Our appreciation of the evidence is that the plaster fell, striking plaintiff on the side of the head and arm, and that she received a small contusion or bruise on both parts of her body as a result thereof.
Defendant's sincere effort to show that the plaster fell because of the application of persuasive force by someone, and not because of any existing defect, is not supported in the slightest by evidence of any acceptable character. The testimony of the architect that the markings on the broken pieces bore evidence of tampering is, as he concedes, purely speculation on his part, yet assigning other equally plausible reasons for this rather unusual disclosure. The broken particles, it is true, show rather firm and substantial plaster, yet it is also shown that this plaster was of a variety long since discarded and that this particular plaster had been installed fifty years ago. Defendant's answer shows that, because of the leaky condition of the roof on the premises in question, a new roof was built a few months previous to the accident. It is not unreasonable to believe that, because of this leaky roof, with water accumulating above the ceiling, the plaster became loosened, eventually resulting in the accident.
The defendant's effort to ascribe the falling plaster to a windstorm is clearly discounted by the official reports of the United States Weather Bureau in that, at the hour of the accident, the highest wind velocity was sixteen miles per hour.
However, we believe that plaintiff has magnified her injuries and that she was feigning illness and pain during most of the period in which she says she was confined to her bed, this, undoubtedly in the hope that her lamentations and confinement would give the impression that she was more seriously hurt than was actually the case. Her own doctor describes her injuries as minor bruises, with no serious attending discomforts. We can appreciate the discomfort of inhaling powdered plaster or dust and its probable irritating effects and that plaintiff did experience such discomfort. But, again, her description of this inflammation is, we think, grossly exaggerated, and we shall make proper allowance for this experience.
In view of all the circumstances of the case, we believe that an allowance of $75 for the plaintiff's pain and suffering would be ample, in addition to the amount of $12.80 for drugs and medical services she received.
For the reasons assigned, the judgment appealed from is annulled, avoided and reversed, and it is now ordered that there be judgment in favor of plaintiff, Mildred *West Page 787 
Wallace, and against Julius Meyer, defendant, in the full sum of $87.80, with legal interest from judicial demand and all costs.
Reversed.