**BRADLEY v. YANCY.**

No. 5999.

Court of Appeal of Louisiana. Second Circuit.

Nov. 3, 1939.

Rehearing Denied Dec. 1, 1939.

Robert J. Newson, of Shreveport, for appellant.

Cook, Cook & Egan and Albert T. Hughes, Jr., all of Shreveport, for appellee.

DREW, Judge.

This is a suit seeking damages for personal injuries brought by a colored woman against the landlord of her husband. The plaintiff's claim grows out of an alleged accident wherein she caught her left ankle on a piece of loose screen in the back door as she was going through the said door, and fell down the back steps, sustaining certain alleged injuries. She assigns as the basis of a cause of action the negligence of the defendant in failing to keep the back screen door in repair.

Defendant filed an exception of no cause and no right of action, which was argued in the trial court. Plaintiff then amended her petition, alleging that the defendant had agreed and contracted to repair the alleged defective screen door. To the petition as amended, defendant filed a second exception of no cause of action and no right of action. This was sustained by the trial court and plaintiff's suit was dismissed. Plaintiff then appealed to this court.

Plaintiff alleged she was living on the premises with Ed Bradley as his wife, although she was not married to him. We are of the opinion that she was rightfully and lawfully on the premises, and in so far as this suit is concerned her rights will be governed by the same law which would govern the rights of a lawful wife under the same circumstances. We are also of the opinion the jurisprudence of this state has definitely fixed those rights as follows:

1. The wife of a tenant is a third person as respects her rights to recover from the landlord for personal injuries due to defects in the premises. Harris v. Tennis, 149 La. 295, 88 So. 912; Tesoro v. Abate, La.App., 173 So. 196; Heath v. Suburban Building & Loan Ass'n, La.App., 163 So. 546; Morris v. Hava, La.App., 180 So. 216; Brodtman v. Finerty, 116 La. 1103, 41 So. 329.

2. The owner of a building is not liable for injuries sustained by a third person because of a condition of the premises as the result of failure to make repairs which the law requires that the lessee make, even though the lessor has agreed with the tenant to make the repairs. Farve v. Danna, La.App., 181 So. 823; Moore v. Aughey, 142 La. 1042, 78 So. 110; Yates v. Tessier, 5 La.App. 214; Morris v. Hava, supra; Klein v. Young,

163 La. 59, 111 So. 495; also see Act No. 174 of 1932.

This brings us to the question, a decision of which is determinative of the case: Is the landlord obligated to repair the doors to a building which he owns and which is occupied by a tenant?

Article 2716 of the Revised Civil Code appears to answer the question in the affirmative. It provides as follows:

"The repairs, which must be made at the expense of the tenant, are those which, during the lease, it becomes necessary to make:

"To the hearth, to the back of chimneys and chimney casing.

"To the plastering of the lower part of interior walls.

"To the pavement of rooms, when it is but partially broken, but not when it is in a state of decay.

"For replacing window glass, when broken accidentally, but not when broken either in whole or in their greatest part by a hail storm or by any other inevitable accident.

"To windows, shutters, partitions, shop windows, locks and hinges, and everything of that kind, according to the custom of the place."

The English text of article 2686 of the Louisiana Civil Code of 1825 is identical with the article of the Revised Civil Code of 1870, quoted above. The French text of the 1825 Louisiana Civil Code, article 2686, includes the word "portes", the translation and English equivalent of which is "doors". The Code of 1825 was printed in both French and English. It was first written in French and the English text was merely a translation from the French, and often a poor translation. Tucker's "Source Books of Louisiana Law", 6 Tulane Law Review, 280–285.

Wherever there is a discrepancy between the French and the English texts of the codes of 1808 and 1825, the courts of this state have tried to reconcile the two, and if that was not possible, the text which was more comprehensive was held to govern; the theory being that the more enlarged and comprehensive of the two articles will give full effect to both, since the less comprehensive was included in the more comprehensive article. Chretien v. Theard, 2 Mart.,N.S., 582; Durnford v. Clark's Estate, 3 La. 199; Beaulieu v. Ternoir, 5 La.Ann. 476.

In the case of Phelps v. Reinach, 38 La.Ann. 547, the court, in passing on a discrepancy or difference in the French text of the Civil Code of 1825 and the text of the Revised Civil Code of 1870, said:

"It is well settled that when there exists a discrepancy between the English and French texts of the Code of 1825, the latter prevails.

"Under that rule, the word 'seclusion' found in Article 3027 R.C.C. [of 1870], 5th line, should therefore be read 'reclusion.'"

There are, however, no authorities cited in the opinion upon which to base the ruling.

In the case of Sample v. Whitaker, 172 La. 722, 135 So. 38, the court again held where a difference existed between the French text of the Code of 1825 and the Revised Civil Code of 1870, that the French text of the 1825 code governed. The authority cited to support this rule is the case of Phelps v. Reinach, cited supra.

In the case of Straus v. City of New Orleans, 166 La. 1035, 118 So. 125, the court again set forth and affirmed the rule set out in the case of Phelps v. Reinach, supra.

It is clear, therefore, if we should follow the above cited decisions, and there are others, we would be compelled to insert and add the word "doors" to the last paragraph of article 2716 of the Revised Civil Code of 1870; when the article as written in that code does not include "doors" in defining the repairs which the tenant is under obligation to make to the leased premises he occupies.

There are sound common sense reasons as well as sound legal reasons, if we are correct in our first premise that the Revised Civil Code of 1870 is a legislative act, why we cannot follow the rule set forth in the cited cases. It would entail unnecessary labor and time by the bench and bar in order to know what was the law, as laid down in the Revised Civil Code, under the above rule. First, the article of Revised Civil Code of 1870 would have to be checked against the article of the Code of 1825, and that checked against the article contained in the Code of 1808, provided the same article appeared in all codes. We go back to the Code of 1808 for the reason that in the

case of Durnford v. Clark's Estate, cited supra, the court found it necessary to do so in order to arrive at its conclusion. In that case the court found that the article of the 1808 code governed, for the reason that the entire new code was not as a whole a legislative act, and the article in question in that case was not part of a legislative act; and that only the amendments made in 1824 were legislative acts. The court in that case said: "Had this law been passed since the adoption of the constitution [meaning first constitution] it would have presented considerable difficulty in the construction of it."

Section 3 of Chapter 29 of the Act of March 31, 1808, adopting the digest (called Code of 1808) provided: "That if in any of the dispositions contained in the said digest there should be found any obscurity or ambiguity, fault or omission, both the English and French texts shall be consulted and shall mutually serve to the interpretation of one and the other."

In Straus v. City of New Orleans, supra, after quoting the above provision, the court said [166 La. 1035, 118 So. 131]: "For the same purpose, it was provided in section 2 of the Act of April 12, 1824, p. 172, providing for the adoption and promulgation of the Code of 1825, that the English and the French version of each article should be printed opposite one another."

There are no such provisions governing the interpretation of the articles of the Code of 1870. It is printed only in the English language, as required by the Constitution. Due to the many changes in the civic and economic life of this state resulting from the Civil War, and in order to meet these conditions, the Civil Code of 1825 was amended and re-enacted by the Legislature of 1870 and promulgated as the Revised Civil Code of Louisiana. It is Act No. 97 of 1870, and its title reads as follows: "To amend and re-enact the Civil Code of the State of Louisiana, including, besides all other matters embraced in said Code, the several objects set forth in the Table of Contents here annexed and made part of this title, to-wit:"

Chapter 4 of said Code, "Of the Application and Construction of Laws", in article 13, provides: "When a law is clear and free from all ambiguity, the letter of it is not to be disregarded, under the pretext of pursuing its spirit."

The entire chapter deals with construction of words, technical terms, ambiguous words, words in pari materiae, etc., on through to its equity provision in article 21, which governs when there is no express law on the subject. There is no reference made at any place to the French text of the Code of 1825, or digest of 1808. The rules for construction of the act (Revised Civil Code) are provided for as part of it. It is therefore no different from any other legislative act other than as to substance, and therefore must be interpreted as any other act of the legislature is interpreted; and there is no justification in law for adding to or taking from any article of the act (Revised Civil Code).

There is no ambiguity in the text of article 2716 of the Revised Civil Code. It states in plain, simple language what repairs the lessee is required to make on the premises he occupies and it does not include repairs to doors. Under the construction provided for in the code, the courts are without power or authority to add to the requirements provided by the plain letter of the article. The Revised Civil Code of 1870 contains many articles which were not included in the Code of 1825, and fails to include many articles which were in the Code of 1825. The legislature had the authority to delete the word "doors" from article 2716, and it did so. Its reasons are not for us to know. It likewise could have added other repairs to those required by the Code of 1825, if it had so wished. It was not necessary for the lawmakers to provide in the article that they had deleted "doors" from it in order to express their intention. It is enough that doors were not included.

We are convinced that the rule for construction of the articles of the Code of 1825, in so far as relying on the French text of that code is concerned, is not applicable to the Revised Civil Code of 1870. If the article of the Revised Civil Code is not what was intended, it can be amended, as it was enacted by the legislature.

Since article 2716 does not make it the duty of lessees to repair the doors to the leased premises, it remains the duty of the landlord; and, accordingly, plaintiff has set out a cause and right of action in her petition. The lower court sustained an exception of no cause and right of action and dismissed plaintiff's suit. It is from

that judgment plaintiff has prosecuted this appeal.

We are of the opinion the judgment of the lower court is incorrect, and it is now reversed, the exceptions are overruled, and the case is remanded to the lower court to be tried in accordance with law; costs of appeal to be paid by appellee and all other costs to abide the final determination of the case.