[redacted]

**Mary H. SCHELP and Genevieve M. McKinney**

**v.**

**NATIONAL SURETY CORPORATION.**

**Civ. A. No. 12813.**

United States District Court
E. D. Louisiana,
New Orleans Division.

June 7, 1963.

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

Raymond H. Kierr, New Orleans, La., Lloyd C. Hoffmann, New Orleans, La., for plaintiffs.

Gerard M. Dillon, New Orleans, La., for defendant.

WEST, District Judge.

In February, 1962, complainant, Mary H. Schelp, was a tenant, leasing the premises at 536 Madison Street, New Orleans, Louisiana, from the owners, Dianna Rothschild and Gloria R. Poole. Complainant, Genevieve M. McKinney, was, at the time here involved, a guest of complainant, Mary H. Schelp, in the leased premises. Complainants allege that on February 23, 1962, a colored male intruder gained access to the leased premises through a defective and unsafe door and doorway, and assailed and assaulted each of the complainants and raped the complainant, Mary H. Schelp. They allege, in essence, (1) that pursuant to the provisions of LSA–Revised Civil Code, Article 2716, the lessor is obligated, at his or her expense, to make necessary repairs to doors, and (2) that the owners and lessors of the premises and their agents knew of the defective condition of the door and failed to remedy the known defects, and (3) that the failure of the lessors in this case to make such necessary repairs when the need was well known to lessors renders

them liable for damages sustained by complainants allegedly caused by the defective door. Complainants further allege that the owners, at all times pertinent hereto, were insured against the type of liability herein claimed under a policy of liability insurance issued by respondent, National Surety Corporation, and they bring this suit directly against the lessors' insurer, National Surety Corporation, pursuant to Louisiana's Direct Action Statute, LSA–R.S. 22:655.

Respondents filed a motion for Summary Judgment on the grounds that (1) the intruder's criminal acts in raping and assaulting complainants was an intervening cause of their injuries and were not reasonably foreseeable by the landlord, and that (2) the statutory law of Louisiana relieves the landlord of the obligation of repairing doors to leased premises, and thus as a matter of law, there is no duty or obligation on the landlord to repair the door.

It is the opinion of this Court that the position of respondent is sound in that there is no legal duty or obligation placed by Louisiana law upon the landlord to repair the door of leased premises and that thus, the motion for Summary Judgment should be granted.

Article 2716 of the Louisiana Revised Civil Code of 1870 provides, in part:

"The repairs, which must be made at the expense of the tenant, are those which, during the lease, it becomes necessary to make:

\*　　\*　　\*　　\*　　\*　　\*

"To windows, shutters, partitions, shop windows, locks and hinges, and everything of that kind, according to the custom of the place."

This Article was a re-enactment of Article 2686 of the Louisiana Civil Code of 1825, the English text of which read exactly the same as quoted above. But the last paragraph of the French text of Article 2686 of the Louisiana Civil Code of 1825 read as follows:

"Aux portes, croisees, planches de cloison et de fermeture de boutique, gonds, tarjettes, (targettes) ser-

rures et autres, suivant l'usage des lieux."

Literally translated into English, this says:

"To doors, casement windows, wooden partitions and shop shutters, hinges, bolts, locks, and other things, according to the custom of the place."

It is readily seen that the French text of Article 2686 of the Louisiana Civil Code of 1825 clearly included "doors" in the list of items, the repair of which was the responsibility of the *tenant*. It is also obvious that in the translation from French to English, the word "doors" was omitted from the English text of Article 2686 of the Louisiana Civil Code of 1825. Then, when the Revised Civil Code of 1870 was adopted, the English text of Article 2686 of the 1825 Code was incorporated as Article 2716 of the Revised Civil Code of 1870, thus perpetuating the error of translation committed in the translation from French to English of Article 2686 of the 1825 Code.

■　The rule of law is well settled in Louisiana that when there exists a discrepancy between the English and the French texts of the Civil Code of 1825, the latter prevails. Phelps v. Reinach, 38 La.Ann. 547; Bradley v. Yancy, La.App., 195 So. 110; Sample v. Whitaker, 172 La. 722, 135 So. 38. It has further been held by the courts of Louisiana on many occasions that wherever a discrepancy exists between the French and English Texts of the Codes of 1808 and 1825, the two should be reconciled if possible by holding that the more comprehensive of the two will govern. Chretien v. Theard, 2 Mart., N.S., 582; Durnford v. Clark's Estate, 3 La. 199; Beaulieu v. Ternoir, 5 La.Ann. 476. This rule of interpretation was later extended by the Louisiana Supreme Court to cover interpretations of the Revised Civil Code of 1870, Straus v. City of New Orleans, 166 La. 1035, 118 So. 125, wherein the Court cited many authorities for their holding that even in connection with interpreting the Revised Civil Code of 1870, where dis-

crepancies exist, the French Code and the French Commentators should be consulted for clarification.

This rule of construction and interpretation of the Articles of the Louisiana Revised Civil Code of 1870 has been followed by the Federal Courts whenever the matter has been presented. In Commissioner of Internal Revenue v. Gray, 5 Cir., 159 F.2d 834, the Court said:

"In Louisiana, where the French text of the Code conflicts with the English text, the French text prevails." (Citing cases)

And in United States v. Harang, 5 Cir., 165 F.2d 106, the Court said:

"Article 2402 of the Code of 1870 was a re-enactment without change of the English text of article 2371 of the Code of 1825, which in turn was the English text unchanged of article 64, page 336 of the Code of 1808. Since this is so, the interpretation which would have been made of the English text of those earlier Code articles, where it was at variance with the corresponding French text, must have been adopted along with it. This is necessarily so because the rules of construction of laws in pari materia, article 17, R. C.C. 1870, requires it."

But complainants rely on Bradley v. Yancy, supra, which finally held that while this rule of interpretation governed insofar as the Civil Code of 1825 was concerned, it does not govern insofar as interpretation of the articles of the Revised Civil Code of 1870 is concerned. The Louisiana Court of Appeals in Bradley observed that the Code of 1825 was printed and promulgated with the French and English texts thereof opposite one another, whereas the Code of 1870 was printed and promulgated in English only. The Court took the position that the Code of 1870 was adopted and promulgated for the purpose of "amending and re-enacting" the Civil Code of 1825 and that it contains no reference to either the French or English version of the Code of 1825. They con-

cluded that the Revised Civil Code of 1870 was therefore no different from any other legislative act and should be interpreted as any other act of the legislature, and that consequently, since there is "no ambiguity therein", "doors" were simply not included by the legislature in the items which the lessee is required to maintain and repair. The Court stated:

"We are convinced that the rule for construction of the articles of the Code of 1825, in so far as relying on the French text of that code is concerned, is not applicable to the Revised Civil Code of 1870  *  *  *."

"Since article 2716 does not make it the duty of lessees to repair the doors to the leased premises, it remains the duty of the landlord;  *  *  *."

In view of the many holdings of the Supreme Court of Louisiana contrary to that of the Court of Appeals in the Bradley case, this Court simply must follow the law as pronounced by the Supreme Court of Louisiana. It is not the function of the Court of Appeals of Louisiana to reverse and overrule the Supreme Court, and that is precisely what Bradley attempts to do. While it is true that a federal court must not disregard the holdings of a state appellate court, nevertheless, such rulings may be disregarded if the court is convinced that the highest court of the state would hold otherwise. West v. American Telephone & Telegraph Co., 311 U.S. 223, 61 S.Ct. 179, 85 L.Ed. 139. Not only am I convinced the Supreme Court of Louisiana *would* hold otherwise, I am convinced it *has* held otherwise. It is also significant that in the notes under Article 2716 in West's Civil Code Annotated appears the following: "Error in English translation of French text—the concluding paragraph should read: 'To doors, casement windows, wooden partitions and shop shutters, hinges, bolts, locks.' "

It is, therefore, the opinion of this Court that under the law of Louisiana, there is no duty or obligation on the part of the lessor to maintain or repair

618

doors in leased premises, and thus, as a matter of law, respondent's motion for Summary Judgment should be granted.

In view of this holding, there is no necessity for this Court to pass upon the question of whether or not the failure to repair the door was a proximate cause of the damages complained of.

Judgment accordingly.