## MORRIS v. HAVA.

### No. 16442.

Court of Appeal of Louisiana. Orleans.

April 4, 1938.

C. E. La Prairie, of New Orleans, for appellant.

Robert S. Link, Jr., of New Orleans, for appellee.

JANVIER, Judge.

This is a suit by the wife of a tenant for recovery for injuries alleged to have been sustained by her in premises alleged in the original petition to have been owned by Mrs. Marie Ernestine Chavigny Hava and leased to plaintiff's husband. It is charged that the injuries were sustained as the result of the violation by Mrs. Hava of the contractual obligation to furnish light in the leased premises. After first bringing suit against Mrs. Hava alone, plaintiff, by supplemental petition, prayed for judgment also against certain alleged co-owners, but later dismissed the suit as against the said other persons.

The Board of Administrators of the Charity Hospital of New Orleans, proceeding under authority of Act No. 230 of 1932, claim the sum of $73, alleging that to be the amount to which the said Charity Hospital is entitled for services, et cetera, rendered to plaintiff after the alleged injury.

Mrs. Hava admitted that the premises involved had been leased to plaintiff's husband, but denied that there had been any agreement to furnish light, and maintained

that, as a matter of law, even if there had been any such agreement, it would not have given to plaintiff, a third party to the said contract, any right to claim damage for injury alleged to have resulted from the said breach. Defendant further denied any negligence on her part in connection with the failure to furnish light and, in the alternative, alleged that, if plaintiff was injured as set forth, her injuries resulted solely from her own contributory negligence in stumbling over an object on the floor of one of the rooms.

In the court below there was judgment for defendant. Plaintiff has appealed, but we find in the record no appeal by the Board of Administrators of the Charity Hospital.

The evidence convinces us that when plaintiff's husband verbally leased the small two-room apartment, Mrs. Hava agreed that he might use the two drop lights with which the said apartment was equipped, and that plaintiff's husband thereupon procured one electric light bulb and inserted it in the socket attached to the end of one of the drop cords. The evidence further shows that Mrs. Hava, who herself occupies other rooms in the same building and who had access to the switch and to the meter which served the apartment occupied by plaintiff as well as her own, had, on several occasions, upon leaving the building, turned off the switch and left that entire portion of the premises without light and had failed or forgotten, on her return home, to turn on the said lights.

Defendant vehemently denies that she had contracted to furnish the lights, but we find in the record no satisfactory confirmation of her denial, whereas other witnesses confirm plaintiff's statement that the contract contemplated the furnishing of electric current to the apartment.

Ordinarily the apartment was rented for $5 per month. Upon being informed that the tenant's family included children, Mrs. Hava insisted that an additional 50 cents per week be paid to compensate for the possible damage which might be caused by the children and, upon being asked concerning electricity, she exacted an additional 50 cents per week to compensate her for the cost of electric current.

Guy Fernandez, another tenant, stated that Mrs. Hava told him "that Mr. Morris was paying more rent * * * on account she furnished the lights to Mr. Morris," and he also said that on one occasion he "saw the electricity in the room * * *."

Morris, the tenant, said:

"* * * When we got to talking, my wife asked her did she have electric facilities. She said she didn't furnish electric lights, and she said, 'I will make it $6.00 and furnish lights if that is all that is holding you back.'"

Mrs. Morris testified that, after discussing with Mrs. Hava the terms of the lease, the latter had said:

"* * * 'Well, that will be all right, pay me fifty cents more a month and I will furnish the lights.'"

Having found, then, that the contract which plaintiff's husband entered into with Mrs. Hava contemplated that the lessor would furnish lights, we approach the legal question presented, i. e.: Did the violation of this contractual obligation create in anyone other than the tenant himself any cause of action?

It must be borne in mind that, under the various codal articles touching upon the obligations of lessors to tenants, and upon the obligations of property owners to "neighbors or passengers" and to persons rightfully inside or outside the building, a vast distinction is recognized between tenants and third persons and that it is well settled that, in the contemplation of these articles, the wife of a tenant is placed in the category of third persons and is not considered as the tenant and is, therefore, not permitted to avail herself of the contractual stipulations contained in the lease, nor to make claim for injury resulting from a breach of a contractual provision, unless there is involved, also, a breach of the duty imposed upon the owner of the building in favor of neighbors or passengers, or other persons rightfully within or without the property, or unless there is involved an act of negligence such as, under the general tort laws, would render the negligent person liable.

It has often been said that the wife of the tenant is to be considered as a third person. In Levi v. Crescent City Seltzer & Mineral Water Co., Inc., 2 La.App. 286, we said:

"If the wife is not bound by the law and the contract against the husband, it would seem to follow that she cannot rest a case upon a law or a contract in favor of her husband alone."

In Heath v. Suburban Bldg. & Loan Ass'n et al., 163 So. 546, 549, we again said:

"If the lease is executed by the husband, then, under well-established jurisprudence, the wife does not occupy the status of tenant."

See, also, Tesoro v. Abate, La.App., 173 So. 196, and Harris v. Tennis, 149 La. 295, 88 So. 912.

▮ If, then, the wife of the tenant—plaintiff here—is to recover, it must be because of the violation of some obligation imposed upon the owner in favor of third persons. It must be either under Civ.Code, art. 670, which, as is stated in Klein v. Young et ux., 163 La. 59, 111 So. 495, 497, "makes every owner of a building liable in damages to any neighbor or passer-by who is injured by the fall of any part of the building," or it must be under Civ.Code, art. 2322, which, as stated in that case, makes "every owner of a building answerable in damages to any person who is injured * * by an accident resulting either from the owner's neglect to repair the building or from a vice or defect in its original construction," or, finally and as a last alternative, it must be under Civ.Code, art. 2315, which creates liability in anyone who, by his fault, causes injury to another.

Bearing in mind the fact that the only charge here is that the lessor failed to furnish light, which she had contracted to furnish, it becomes obvious at once that neither article 670, nor article 2322, is in any way applicable, for the former, as has been stated, makes liability to depend upon the falling of the building or of some part of the materials, which, obviously, did not occur here, and article 2322 makes liability to depend upon the owner's neglect to repair the building, or upon vices in its original construction, and obviously, again, here neither of these conditions existed. Unless, then, the fault of the lessor can be brought within the general provisions of article 2315, there can be no recovery.

▮ Generally speaking, of course, in the breach by a lessor of the contractual obligation to furnish lights there is no fault to which a third person may point. There is no duty to furnish lights unless the contract of lease requires that they be furnished, and therefore, though to fail in that duty may be to breach the contract, the failure is not fault on which anyone other than the lessee may rely. Third persons, even though properly and legally in or on the leased premises, have no right to demand from the lessor or owner anything except those obligations and duties which, by law, are placed upon the shoulders of landlords in favor of third persons.

▮ But when the lessor agreed to furnish lights it was obviously within her contemplation that the premises would be used by the tenant's wife and children because she knew that the tenant was married and had children and, therefore, having contracted to furnish lights and having at the outset complied with that obligation, when she breached her contract with her tenant the violation was fault which she must have contemplated might create a dangerous situation to any person rightfully within the premises. Surely, if she had actually turned off the lights while plaintiff was in the premises that would have constituted an active act of negligence from which there would have resulted liability for any damage which might reasonably have been contemplated. We can see no distinction between actually turning off the lights while the premises are being used and turning them off while the tenant and his family are out because it must have been contemplated that the tenant and his family would return and, upon entering the premises, would find themselves in danger of stumbling over furniture or of otherwise injuring themselves because of the absence of light. We think, then, though the obligation to furnish light was placed upon the lessor solely by the contract, that, nevertheless, when she entered into that contract knowing that the lights would be used by other persons rightfully in the premises, her act in turning off the switch constituted negligence to which any of those persons might point as creating in them a right to recover for damages caused by the said act of negligence.

▮ It is true that if, after the making of such a contract, the lessor had, from the beginning of the occupancy, failed to connect the lights, or failed to install the meter, no one could have complained except the lessee himself. That would have involved merely a breach of contract. But here it is clearly shown that the lights were connected. The tenant and the members of his family had used them and when, on the night of the accident, they returned home, they had every reason to expect and to believe that the lights would be available. Therefore, when plaintiff, on entering the premises, attempted to turn on the light and found that the power had been cut off, the danger to which she found herself subjected was directly the result of defendant's act in disconnecting the switch.

Suppose some mischievous third person had entered the premises and disconnected the switch? We think it clear that there would have been liability for the contemplated results of the act of that third person. Just as surely should there be liability for the contemplated results of the act of the lessor. Should she be protected by the fact that there was a contract between her and the plaintiff's husband? We think not.

It becomes necessary that we consider defendant's plea that plaintiff herself was guilty of contributory negligence in stumbling over the piece of wood which had been left on the floor by plaintiff's husband. We do not think that her act constituted such negligence. She states that when she returned home "she waited for Mrs. Hava to come back," but that she found it necessary to get her children's supper, since they became hungry, and that she tried to prepare supper in the dark and, in doing so, stumbled over a piece of wood, fell backwards, and hurt her back. If, because of defendant's negligence, it was necessary that she attempt to move around in the premises in the dark, and if, in doing so, she exercised reasonable care, her stumbling over something in the premises is not chargeable to her own fault.

This brings us to a consideration of the extent of plaintiff's injuries. Except for minor bruises and apparently a slight injury to her back, we find nothing of great importance, though she alleges that she sustained an incomplete abortion. The records of the Charity Hospital and the physician produced by her show that, to say the least, it is doubtful if there was such incomplete abortion. The physician referred to, Dr. E. H. Walet, testified that he was at first doubtful as to whether or not there had been such abortion, and that he, therefore, required a pathological examination in the laboratory, and that from this examination he reached the conclusion that it had not occurred. Plaintiff did suffer some pain and she was incapacitated for about two weeks. We think that under the circumstances an award of $150 should amply compensate her.

As we have already stated, the Board of Administrators of the Charity Hospital of New Orleans has not appealed from the judgment dismissing plaintiff's suit and, therefore, whatever its rights may be under Act No. 230 of 1932, we can afford it no relief in this proceeding.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be and it is annulled, avoided, and reversed, and that there now be judgment in favor of plaintiff, Mrs. Hazel Jinks Morris, and against the defendant, Mrs. Marie Ernestine Chavigny Hava, in the full sum of $150, with legal interest from judicial demand and for all costs.

Reversed.