Plaintiff, Elnora Simmons Hughes, and her husband, Joseph Hughes, seek recovery for loss alleged to have been sustained by them as the result of an accident caused by defective steps of a building, a portion of which they occupied as a residence.
It is asserted that, on the morning of Sunday, July 2, 1939, as Elnora was descending to the ground by means of the steps, they "gave way, and/or fell * * *, precipitating her to the ground", and that she sustained injuries principally consisting in a sacro iliac strain. On behalf of the wife, judgment is prayed for for $900 and the husband, as master of the community, prays for a judgment in his behalf for $42 for the medical expenses sustained in connection with his wife's injuries. It is alleged that the building was owned by Mr. and Mrs. Sam Abate and that the defective condition of the steps was due to their failure "to repair and keep said premises in safe condition".
Defendants, through exceptions of no right of action and of no cause of action, would make the point that plaintiffs were not tenants of the owner or owners and that, therefore, they cannot maintain an action for damages against the said owner or owners. They also present a plea of misjoinder of parties-defendant and seek to show that Mrs. Abate alone is the owner of the building, it being her separate property, and that, therefore, Mr. Abate should not be joined as a defendant. These pleas and exceptions, when called for trial, were continued indefinitely and apparently were never ruled upon and defendants filed an answer in which they denied every allegation of plaintiffs' petition and especially averred that the daughter of defendants, on the night before the accident, called at the building to collect rent and, noticing that "the front steps were not secure * * *, gave instructions to all of the tenants that the steps were not to be used, and that the plaintiffs herein were so informed". Defendants especially pleaded contributory negligence "in that the plaintiffs, with full knowledge of the condition of the steps, used them".
There was judgment against Mrs. Abate alone in favor of Elnora Simmons Hughes for $200 and in favor of Joseph Hughes for $42. Mrs. Abate has appealed and plaintiffs have answered the appeal, praying that the amount in favor of Elnora Hughes be increased to $900, as originally prayed for.
The result sought by the plea of misjoinder has been accomplished by the dismissal of the suit against Mr. Abate and there has been no appeal from the judgment in so far as it is in his favor. The exceptions of no cause of action and of no right of action are based, we think, upon a misunderstanding of the jurisprudence involving the relationship which exists between lessors and lessees and of the jurisprudence concerning the liabilities of the owners of buildings to persons injured by defects in those buildings.
The contention of defendant Mrs. Abate seems to be that Elnora and Joseph Hughes were not tenants of Mrs. Abate, but in reality sublet a portion of the place from one Sam Randall, who was the tenant, and therefore, since they were not tenants, they cannot maintain an action in damages against her. They maintain that this contention should be sustained because of the jurisprudence which has been followed in the cases of Duplain v. Wiltz, La.App., 194 So. 60, and Graff v. Marmelzadt, La.App., 194 So. 62. But we think that they have misunderstood the principle which was involved in those cases. In each of those cases the defendant was not the owner of the property, but was the lessor, and in each we held that a lessor who is not also an owner may be held liable only by a lessee and not by a third person on the premises. This is because Civil Code, Articles 2692-2695 have application only as between lessors and lessees. But Articles 670 and 2322 do have application where, because of a defect in the building, a third person rightfully on the premises is injured because of the defect and seeks recovery from the owner of the building. Here, even if we could treat Elnora Hughes as not being a tenant, but only a third person rightfully on the premises, still she could hold Mrs. Abate liable — not under Articles 2692-2695, but under either Article 670 or 2322, for, under both of these articles an owner is rendered liable for an accident which has resulted from failure to *Page 70 
keep his building in repair and, under the latter article, he is liable where an accident results from a defect in the building which "is the result of a vice in its original construction". To state the matter very simply, an owner is liable to any person rightfully on or near the premises if, because of a defect, that person, being himself without fault, is injured. Klein v. Young,163 La. 59, 111 So. 495; Heath v. Suburban Building Loan Association, La.App., 163 So. 546; Tesoro v. Abate, La.App., 173 So. 196; Morris v. Hava, La.App., 180 So. 216.
Since there is no dispute about the existence of defects in the steps, the only remaining contention is that plaintiff should not have used the steps knowing of their defective condition and having been warned about it.
In their answer defendants made the allegation that their daughter "gave instructions to all of the tenants that the steps were not to be used, and that the plaintiffs herein were so informed". When they attempted to sustain this averment by proof, the daughter testified that she had warned Sam Randall and that he had repeated the warning to the other occupants of the building, including the plaintiffs. This was objected to on the ground that it was not responsive to the averment in the answer that the warning had been given to all persons by the daughter herself.
We are not at all certain that the averment of the answer should be so strictly construed as to require a holding that what defendants intended to aver was that the daughter had personally spoken to the plaintiffs. The averment simply states that she gave instructions to the tenants "and that the plaintiffs herein were so informed" and it may well be that that allegation might properly be interpreted as meaning that the warning which she gave to some was repeated to the plaintiffs.
Whether the warning was given is a question of fact and it cannot be said that the evidence tendered by defendants so clearly preponderates as to justify a reversal of the judgment rendered below. It is true that the daughter testified that she gave the warning on the night before the accident and it is also true that Sam Randall testified that he immediately repeated the warning to the plaintiffs. But there is a very obvious conflict in defendants' evidence concerning the place in the building at which the plaintiffs were when the warning was repeated, and this conflict is so apparent that it warrants the conclusion that there is not that positiveness and certainty in the testimony of Randall which would be necessary to authorize a reversal.
When we come to consider the testimony concerning the knowledge of the defect which Elnora Hughes may have had independently of the warning, we find that it is true that the evidence shows a defect had existed for some time and that she was aware of it. But there is nothing from which we can conclude that the step was so defective as to render the user thereof guilty of contributory negligence. There have been many cases in which this identical defense has been made and in each of which the defendant has contended that the knowledge of the injured party that there was a defect should prevent recovery for an injury sustained subsequently. But, unless there is evidence which would indicate the defect to be so serious as to endanger the life or body of the user, the courts have held that the continued use thereof does not constitute contributory negligence.
In Boutte v. New Orleans Terminal Company, 139 La. 945, 72 So. 513, 516, it was shown that the old woman who was killed as a result of a defective balustrade "knew that the gallery was rotten and needed repairs", but the Supreme Court said: "* * * To assume that the lessee, in this case, knew that the balcony was so rotten that it could not withstand her weight would be to assume that she committed suicide. All that could be assumed in that respect would be that she knew or ought to have known that the balcony was unsafe. The evidence, however, does not justify our concluding that the danger was so apparent as to do away with the provisions of article 2695 of the Civil Code, whereby the lessor was bound to guarantee the lessee against all vices and defects in the leased premises and to indemnify her for any loss resulting therefrom."
In Danove v. Mahoney et al., La.App., 176 So. 404, 405, the injured person alleged "that defendants knew that this porch and sill were in a decayed and rotten condition, as petitioner, personally, and through other persons, had notified defendants, through their agent, of this rotten condition." We considered the fact that this allegation showed in plaintiff herself knowledge "of this rotten condition", but, after discussing the language used by the Supreme *Page 71 
Court in the Boutte case — quoted above — we said: "Applying the foregoing language to the allegations contained in the petition now under attack, it will be readily seen that the most that could be assumed from the plaintiff's averment is that, while she knew that the porch and sill were in a decayed and rotten condition, she did not know that it was so rotten as to be unable to withstand her weight."
That is all that we can say here — that plaintiff knew that the step was not in the best of conditions — but the evidence shows rather plainly that she had no idea that it was in the dangerous condition which later developed. We would not be justified, under the facts shown here, in holding that Elnora Hughes was guilty of contributory negligence.
The evidence shows that she sustained a sacro iliac strain and that her injuries were not particularly serious. It is true that she was treated by her physician from July 5th to September 15th and that he did find some external evidence of injury. He found it necessary to "strap" her back. Elnora herself stated that she did not recover consciousness until she arrived at the hospital and that she suffered "very much pain". She did not remain at the hospital, but called in her own physician and was required to remain in bed for "about a month and two weeks".
In most of the cases involving sacro iliac injuries we find that the courts have allowed amounts substantially larger than that awarded here.
In Hoffman v. Zimmer et al., 175 So. 115, we allowed $750 for a mild sacro iliac strain.
In Synigol v. Oury, 17 La.App. 163, 134 So. 324, 325, the plaintiff was knocked from a wagon and suffered injuries in the sacro iliac region. These injuries necessitated strapping. The plaintiff suffered considerable pain and lost six weeks' earnings at $19.50 per week, and also sustained actual damage in the sum of $34 for medical bills and $48 for repairs to his wagon. We affirmed a judgment in his favor for $490. Eliminating the items of actual damage, as distinguished from physical, we find that the recovery in that case was in the neighborhood of $300.
In Liddell v. Lex, 8 La.App. 13, we affirmed a judgment of $250 where plaintiff was injured by falling plaster and was confined to bed for three weeks and continued to suffer for some time thereafter.
None of these cases appears to us to present injuries very similar to those involved here, but all indicate that the amount awarded was somewhat insufficient. We have decided to allow Elnora Hughes $400 for her injuries.
The judgment appealed from is amended by the increase of the amount awarded to Elnora Simmons Hughes to $400. In all other respects, the judgment is affirmed, at the cost of appellant.
Amended and affirmed.