Jeanne Staes, wife of Joseph Duvernay, seeks recovery of damages from the defendants, charging that she sustained physical injuries as the result of a fall caused by defective steps leading to the ground from the rear door of the premises No. 2112 St. Peter Street, of which she avers she and her husband were tenants. She charges that on the morning of November 4, 1939, at about 8:30 o'clock, as she attempted to descend to the ground by means of the said steps, the top tread tilted and caused her to lose her balance and that "the left side of the frame of said steps pulled away from the rear of the building." She alleges that she sustained a Colles' fracture of the styloid process, left radius and also that she sustained "a bruise on her left temple, a cut on her left cheek bone, and bruises on the left side of her face, which resulted in the almost immediate swelling and closing of her left eye * * *."
She charges that the defendants were owners of the said leased premises, having inherited the building from their mother and that, therefore, the said defendants, as a matter of law, assumed all of the obligations *West Page 454 
which their deceased mother had undertaken as lessor, and that, therefore, as lessors as well as owners, the said defendants are liable to her. She prays for judgment in the sum of $3,000.
Defendants deny all of the material allegations of plaintiff's petition and resist her demand on several grounds. They maintain that her husband was the tenant and that she herself was not a tenant but was a third person, and they assert that, as a matter of law, an owner of leased premises is not liable to a third person "unless the injuries result from an apparent defect in the premises." They further assert that she was not hurt in the manner set forth in her petition, and they contend that she has not borne the burden of proving the facts alleged, and they further maintain that if there was any defect in the steps, she, having occupied the premises for about twelve months, was, or should have been, aware of such defect and that therefore she, herself was negligent in making use of the said steps.
There was judgment for plaintiff for $225 and defendants have appealed. Plaintiff has answered the appeal praying that the award be increased to $3,000 in accordance with the prayer of the original petition.
On the morning on which the accident occurred, plaintiff's husband, and either two, or three, of her grown sons were in the street in front of the house, engaged in repairing an old motor truck, which belonged to them, and which they hoped to be able to use in looking for work. Another son was sick, and was inside the house. Plaintiff says: "* * * I had just put my right foot on the top part of the step and the step loosened from the house and caused me to fall on the pavement and strike my arm and bruised my eye." No one saw her fall, but she states that she managed to crawl back up the steps and then called to her husband and her sons, who were working on the truck in front of the house. A short time later her husband took her to the Charity Hospital. The records of that institution show that she sustained an injury to her wrist and a Colles' fracture. She testified also that she sustained bruises and contusions to her head and face, and that her eye was swollen so much that she could scarcely use it for sometime.
There is no evidence whatsoever which directly contradicts the statement of plaintiff that she fell when the tread of the top step turned under her except that there is evidence to the effect that she, at one time, said that she had "slipped". Defendants, however, maintain that there are many suspicious circumstances surrounding the alleged occurrence, and that by these circumstances there is created grave doubt as to the actual occurrence, and that this doubt is sufficient to justify the conclusion that she has not made her case sufficiently certain to justify recovery. It is shown that at the time of the alleged fall, plaintiff and her husband were delinquent in rent payments, and it is argued that this always should be considered as a suspicious circumstance. It is further pointed out that while on the witness stand plaintiff several times repeated the details of her story in such a parrot-like manner as to create the impression that she had drilled herself in the said story and was not telling the exact truth. It is true that at least four different times, while testifying, she repeated the facts, and that in doing so she used the same words almost verbatim. It is also pointed out that although she had been rather severely injured, and that although she had stated to her husband and sons, at the time, that the steps had given way under her, no other member of her family went back to look at the steps at that time, though her husband and three of her sons were perfectly well, and could have inspected the steps in a very few minutes.
Counsel for defendants would make much over the fact that though plaintiff charged that the steps pulled away from the house, the record shows they did not do so. It is true that plaintiff alleged that "the left side of the frame of the said steps pulled away from the rear of the building" and it is quite certain that this did not occur, but if one end of the top step tilted as plaintiff put her foot upon it, she might, in good faith, have formed the impression that the entire structure was pulling away from the house. But whether such an accident occurred is a question of fact and all that we can say from the record is that there are circumstances which may be pointed to as suspicious and as throwing some doubt upon the truthfulness of plaintiff, but we cannot overlook the fact that the district judge, who saw and heard all of the witnesses, reached the conclusion that plaintiff had been injured as she alleged. It is just such a case as this which amply demonstrates the soundness of the rule that the finding of a trial judge on a *West Page 455 
question of fact should not be disturbed unless manifestly erroneous.
But defendants argue that, as a matter of law, they are not liable to plaintiff unless it can be said that the defect from which her injury resulted was apparent, and that they were negligent in not repairing it. They base this contention on the averment that plaintiff was not a tenant in the premises. In the first place, the record makes it rather clear that both plaintiff and her husband were considered as tenants. On many occasions she had paid the rent, and when defendants desired to force her husband and herself to vacate the premises, they, defendants, caused the issuance of a notice to vacate directed to "Mr. and Mrs. J. Duvernay."
But if she was not a tenant, and was merely a third person occupying the premises through the right of occupancy which her husband had as tenant, she was thus a third person rightfully on the premises, and under the circumstances, they, as owners, were liable to her for injuries sustained as the result of such a defect. On several occasions, in other cases, it has been contended that the owner of a building is not liable to third persons rightfully on the premises unless the injury had resulted from fault on the part of the owner. But from all of those cases there has resulted a settled rule that because of the effect of Articles 670 and 2322 of our Civil Code, an owner is liable to a third person for the results of accidents caused by defects in the owner's building, whether those defects were latent or not. In Heath v. Suburban Building Loan Association, 163 So. 546, 551, we quoted from Hanover v. Brady, La.App., 148 So. 267, as follows: "`Although the liability of the house owner to a licensee or passerby is made to depend upon negligence, the mere fact that the building is defective is in itself proof of that negligence, and this, whether the defect is apparent and easily discoverable, or is such as would not be noticed except upon careful inspection.'"
In Tesoro v. Abate, 173 So. 196, 202 we said: "It is true that the jurisprudence of this state has broadened the language of articles 670 and 2322 of the Code to such an extent that the owner of a building practically insures any third person, rightfully on the premises, against injury caused by the vices or defects of the building due either to construction or failure to make repairs. And this is so even though the property is in possession of a tenant and the owner is not acquainted with the fact that some of the appurtenances of the building are in need of repair. The basis of liability for any tort is fault, and the decisions have presumed negligence on the part of the owner whether such negligence actually existed or not."
See also Hughes v. Abate, La.App., 2 So.2d 68, 69 in which appears the following: "* * * even if we could treat Elnora Hughes as not being a tenant, but only a third person rightfully on the premises, still she could hold Mrs. Abate liable — not under Articles 2692-2695, but under either Article 670 or 2322, for, under both of these articles an owner is rendered liable for an accident which has resulted from failure to keep his building in repair and, under the latter article, he is liable where an accident results from a defect in the building which `is the result of a vice in its original construction'. To state the matter very simply, an owner is liable to any person rightfully on or near the premises if, because of a defect, that person, being himself without fault, is injured. Klein v. Young,163 La. 59, 111 So. 495; Heath v. Suburban Building Loan Association, La.App., 163 So. 546; Tesoro v. Abate, La.App., 173 So. 196; Morris v. Hava, La.App., 180 So. 216."
The plaintiff sustained an injury to her wrist. According to the Charity Hospital report, which has been offered in evidence, her injury was diagnosed as a Colles' fracture. An X-ray photograph taken at the hospital on the day on which plaintiff was injured, November 4, 1939, revealed that "the left wrist shows what appears to be a fracture of the styloid process of the radius with no displacement of the fragments." On November 18th and November 25th X-rays were also taken of plaintiff's injury. Those X-rays disclosed that "the views of the left wrist show a fracture of the distal end of the radius with good position of the fragments". The hospital report discloses further that the fracture necessitated the placing of her left arm in a splint for 24 days, and that there were no deformities or complications. We have not been favored with any other medical testimony as to the extent of plaintiff's injuries and so far as the hospital report shows there were no complications.
In Article 6 of her petition plaintiff alleged that she "also sustained a bruise on her left temple, a cut on her left cheek *West Page 456 
bone, and bruises on the left side of her face, which resulted in the almost immediate swelling and closing of her left eye, * * *". These injuries are not mentioned in the hospital report, although plaintiff did testify that she suffered these injuries. If they resulted from the fall, they must have been very slight, otherwise they would have been noted on the hospital report.
In Johnson v. Louisiana Railway Navigation Company,151 La. 1075, 92 So. 704, the plaintiff broke both bones of her right forearm, and suffered a severe contusion of the right knee. She was confined to her bed for a week, and her arm was in splints for three months. The Supreme Court allowed plaintiff to recover $750 for her injuries.
In Greer v. Hamilton, 3 La.App. 120, our brothers of the Second Circuit awarded $400 for a dislocated wrist which caused disability for about eight weeks. In that case, in addition to the wrist injury, the plaintiff was considerably bruised and unable to do any work for a short period of time. He expended about $36 for doctor bills and for the making of an X-ray of his hand. All of these items of damages were included in the $400 award.
In Gardiner v. De Salles, 13 La.App. 83, 126 So. 739, the plaintiff, a thirty year old woman, sustained a fracture of both bones in her forearm and right humerus. She suffered severe pain and was confined in a hospital for three weeks, and for three months thereafter received treatment at the hospital's out-door clinic. Further it appeared that she suffered stiffness in her arm for a considerable period after the injury, and that she had lost earnings of about $10 a week as a result of her injuries. We allowed $750 for both the injuries and the loss of earnings.
In Cyrus v. Tung, 16 La.App. 549, 134 So. 782, we awarded $500 as damages for a fractured arm, where there were no complications.
In Marsiglia v. Toye et al., La.App., 158 So. 589, the plaintiff's injuries consisted of a fracture of the left humerus or bone of the upper part of the arm, as a result of which she had an impairment of the flexion of her left hand which prevented her from completely closing her fist, and a certain limitation in the movement of her elbow in that she could not elevate it to a normal extent. The impairment in the function of the arm and hand was estimated by her physician to be about 25% of normal. Her physician stated further that in a vast majority of similar cases the loss of the function is regained. The injured plaintiff was allowed $1,000, which included $160 for medical expense.
It is to be noted that plaintiff in the case at bar incurred no doctor bills or expense for medicine, and that she was never confined to the hospital. Since plaintiff was a housewife, naturally she did not incur a loss of wages, nevertheless as the result of her injuries it was necessary for her mother to assist her in her household duties for several weeks after the accident, and we have taken this into consideration in determining the quantum of damages. The judge, a quo, awarded her $225. We think this amount inadequate as damages for a fractured wrist, and that an award of $400 would be more in accordance with the jurisprudence.
The judgment appealed from is amended by the increase of the amount of the award to $400, and, as thus amended, it is affirmed at the cost of appellants.
Judgment amended and affirmed. *West Page 480