Adele Beards Coleman attempts recovery in damages from William J. Rein, alleging that she was a tenant in a building owned by the defendant when the tread of one of the steps of a stairway leading to the ground broke under her foot, causing her to fall, and that as a result she sustained serious physical injuries. Rein admits the ownership of the building but denies that plaintiff was a tenant therein, and he especially denies that she sustained injury as a result of a defect in the building, and he makes the charge "that the plaintiff herein was not injured in the manner alleged by her in her said petition; that this claim is a part of a conspiracy on her part and others to defraud defendant;".
In the District Court there was judgment for defendant and plaintiff has appealed. The record shows that plaintiff for some time had been living with one Wallace Coleman, as his common-law wife, and that they occupied a room or apartment on the second floor of the building owned by Rein, from which floor to the ground there was a stairway of some 21 steps.
We may say at this time that whether plaintiff was the tenant is of no importance, because if she was occupying the apartment, either as a tenant or because of the right of occupancy of Wallace Coleman, and was injured because of a defect in the building, Rein would be liable — if she was a tenant because of the obligations placed upon him by Articles 2692, 2695 of the Civil Code, and if she was a third person then because of the effects of Articles 670 and 2322. There is then only one question which is presented, and that is one of fact, i.e., Was there such an accident or does this suit represent a fraudulent attempt to extort money from the defendant?
Plaintiff says that at about 9 o'clock on the morning of August 28th, 1939, she was descending to the ground with a little pan in her hand, and she adds — "When I got eight steps down I stepped on that bad step and it went under me and I fell and I did not go any further than three steps further down."
The step referred to as the bad step was shown to have been the eighth step from the top, and the defect on which plaintiff relies was located on the extreme, front right-hand edge of the tread of that step. The tread itself was exhibited to us as it had been in the District Court, and the wood is obviously sound, and not decayed at all. It could easily have supported many times the weight of plaintiff, and it is not contended that it turned or that any of the nails holding it to the "horse" were loose.
Plaintiff's entire story is based upon the charge that the extreme right-hand front corner of the tread broke away from the rest of that board, and that it was on this extreme right-hand corner that, by chance, she had placed her foot. The piece which is said to have broken off was offered in evidence. It is found to be about 2 1/2 inches from front to rear and about 4 1/2 inches from the outer edge to the point at which it is broken away from the rest of the tread. The "horse" on that side of the stairway *West Page 623 
is about 3 inches in width, and the tread extends about 1 inch or a little more over the side of the horse, so that that part of the tread which is said to have been broken under plaintiff's foot was resting almost entirely upon the horse itself.
There was a handrail on that side of the stairway as well as on the other side, and this rail was almost directly over the small piece of tread which is said to have broken off, the whole which remained extending only an inch or two on the inside of the said rail. A demonstration made in court showed quite convincingly that a person descending the stairway in the usual manner would not place his foot on the extreme right-hand edge of the tread because to do so it would be necessary to press the body, itself, extremely close to the rail. Of course this is exactly what plaintiff claims that she did do, and she gives as her reason the fact that she had been pregnant for two months, and was exercising great caution. She says that for this reason she clung tightly to the rail and pressed her body against it. Because of the location of the alleged break directly over the horse and almost directly under the rail, it seems very doubtful indeed whether plaintiff did put her foot on that step, but when we come to consider the oral evidence, we find that this evidence fails by a large preponderance to support plaintiff's story. On the contrary, it quite convinces us that that story is false in all essential particulars.
Willie Burton called as a witness for plaintiff testified that he "was standing on the top of the stairway" and that he saw plaintiff going downstairs when she fell, and that "the piece of the step where she fell, I picked up that piece of step."
It was shown that Burton had previously made two written statements in both of which he had said that on the night before the alleged occurrence he and Eddie Brunus had heard Wallace Coleman "knocking on the step", and that when Coleman was asked what he was doing he had said "catching air." In those statements Burton said that when plaintiff descended the stairs, she did not fall at all but that when she got to about the eighth step, she sat down. When confronted with these statements, Burton made several conflicting explanations, claiming at first that he had made no such statement, and later that he must have been drinking. All we need say about Burton is that no reliance can be placed on any statement made for either party.
Eddie Brunus, a witness for defendant, stated that he resided in one of the apartments of the defendant, and that on the night before the accident he had seen Wallace Coleman "sitting on the stairs kicking his heel on the step" and he added that "we", meaning himself and Burton, "asked him what he was doing and he said he was catching air from the alley."
When asked where Coleman had been sitting, he answered: "About the eighth step." This witness also stated that on the morning after he had heard Coleman knocking on the step, he had seen plaintiff descending the stairway. When asked: "How did she fall?", he answered "She seemed to be sitting down", and in reference to the little piece of wood, which had previously formed a part of the tread, he said: "* * * it seemed when she fell she pushed the piece of wood with her hand * * *."
Plaintiff attempts to impeach the testimony of Brunus but in view of the fact that, in important particulars, it seems to be corroborated by other evidence in the record and is, in fact, corroborated by the written statements made by Willie Burton, we are convinced that the true fact is that plaintiff did not fall at all, but that possibly such minor injuries as she might in some other manner have sustained gave her the impression that she could collect damages from her landlord, and that therefore she or Wallace Coleman deliberately broke from the tread of the step a small piece, and then, on the next morning, she sat down on the step and called out that she had been injured.
Of course there is testimony of Wallace Coleman contradicting the damaging statement of Brunus, and the written statements made by Burton, and in other ways plaintiff sought to discredit Brunus, and she even attempted to discredit the doctor who testified on behalf of the defendant, and who made little of her alleged injuries.
We see no necessity of going further into detail. The judgment is not only not obviously erroneous but appears to us to be completely justified by the record. Plaintiff has unquestionably imposed upon her own counsel with her fraudulent story, but we *West Page 624 
cannot permit her to impose upon the defendant.
The judgment appealed from is affirmed at the cost of appellant.
Judgment affirmed.
SIMON, J., recused.