Plaintiffs, Mrs. Rose Roppolo, and her husband, Steve Roppolo, seek recovery for loss alleged to have been sustained by them as the result of an accident caused by falling plaster in the building located at 1527 Adams Street in the City of New Orleans and occupied by them as a residence.
It is asserted that, at about the hour of 4:30 o'clock, on the morning of February 10, 1940, while the family were asleep, Mrs. Roppolo was injured by the fall of plaster from the ceiling in the bedroom, jointly occupied by her and her husband. On behalf of the wife, judgment is sought for $4,000, and the husband, as master of the community, prays for judgment in his behalf for $125 for the medical expenses sustained in connection with his wife's injuries. It is alleged that the leased building was owned in community by Louis Spiro and his wife, Sarah Lissa, now both deceased, and presently represented by Mrs. Ruby Pick, testamentary executrix duly qualified and confirmed as such in the "consolidated matters entitled `Succession of Louis Spiro', No. 233,907, and the `Succession of Sarah Lissa, wife of Louis Spiro', No. 226,841, Section `C' of the docket of the Civil District Court for the Parish of Orleans * * *". It is to be observed at this moment that, though plaintiffs affirmatively aver the leased premises to have been community property of the decedents, damages are sought only against Mrs. Ruby Pick, in her capacity as testamentary executrix of the succession of Louis Spiro. It is further alleged that the accident "and the resulting injuries * * * are due to the direct result of faulty construction and unsafe condition of said premises."
For answer, defendant denied every allegation of plaintiffs' petition, and averred that, if it were shown that plaintiffs were tenants of the premises in question, plaintiffs, by virtue of the provisions of the rent receipts, assumed all risks incident to occupancy, thus barring their right of recovery.
A trial on the merits of the issues created by the pleadings resulted in a judgment in favor of Mrs. Rose Roppolo for $500 and in favor of Steve Roppolo for $125. Defendant has appealed and plaintiffs have answered the appeal, praying that the amount awarded Mrs. Rose Roppolo be increased to $4,000, as originally prayed for.
We have no difficulty in finding as a fact that the plaster did fall, since the evidence is overwhelmingly to that effect. There can be no dispute that the premises were owned by Louis Spiro, "in community with his wife", now both deceased, and that they were leased by plaintiff, Steve Roppolo, from Louis Spiro, under an oral lease, during the month of November, 1939, and thereafter occupied by plaintiffs as a family residence.
The contention of defendant concerning the assumption of risk by the lessee is based upon a printed waiver which appears upon three rent receipts offered in evidence. This inscription reads as follows:
"Tenant rents this property with the understanding that no damages will be due by cause of fallen plaster or other unforeseen defects, and failure to notify the owner or agent, in writing of any visible defects will serve as contributory negligence and will vitiate all claims."
Defendant contends that the inscription, supra, is in accordance with Act 174 of 1932, which relieves the lessor from responsibility for damages for physical injuries occasioned the lessee or occupant by vices or defects in the leased premises when the lessee "assumes responsibility for the condition of the premises". Section 1. Under Section 2 of the statute, supra, the words "by license of the tenant or occupant" are defined to be "those who derive their right or license to be on the premises from said tenant or occupant, such as sub-tenants, roomers, servants, guests, customers, employees, members of the family and others of a similar status". McFlynn v. Crescent Realty Corporation of Delaware, La.App., 160 So. 454; Paul v. Nolen, La.App., 166 So. 509. In Clay v. Parsons, 144 La. 985, 81 So. 597, it was said:
"Our opinion is that the provisions of the Civil Code that hold the owner of a building answerable for any injury that may befall another because of the landlord's neglect to make repairs are subject to the general law of negligence, and that the obligation thus imposed by law upon the landlord may be dispensed with, not only by a lessee as a condition of his contract oflease, but by any one desiring to occupy the house and willing to assume the risk." (Italics ours.)
In Pecararo v. Grover, 5 La.App. 676, we held: *West Page 842 
"It is lawful to stipulate in a lease that the lessor shall not be responsible for damages caused by any vice or defect of the leased property.
"With such a stipulation in a lease the lessee cannot recover damages against the lessor for injury received from falling plaster."
(Syllabus, 1 and 2.) (Italics ours.)
Defendant does not contend that there was any assumption of risk on the part of the lessee in the verbal contract of lease. The evidence discloses that the lease contract was oral and that the only agreement or understanding between the lessor and the lessee was the amount of the monthly rental to be paid, there being no stipulation or agreement of an assumption of risk by the lessee as a particular condition of the contract of lease itself. In support of her contention, defendant relies exclusively upon the inscription (supra) contained in the rent receipts offered in evidence. Necessarily, if it be held that there was an assumption of risk on the part of the lessee, it can only find its support in the rent receipt provision quoted above.
The evidence shows that when the negotiations leading up to the contract of lease had been consummated, and the first monthly rental paid in advance, lessee received the rent receipt in question. He testified that he did not read it, being under the belief that it evidenced simply a voucher, or receipt, for the first month's rent in advance, and which would accord him the immediate right of occupancy. It is further shown that the lessor did not direct lessee's attention to the inscription contained in the rent receipt, and, as disclosed by the record, no discussion was had, nor was any notice or warning, verbal or otherwise, directed to the lessee to the effect that the receipts embodied a special contract between them. Defendant must necessarily rely entirely upon the silent delivery and acceptance of the rent receipt to sustain her contention that such a stipulation constituted a contract between them.
From the circumstances of the transaction, lessee unquestionably had the right to regard this rent receipt simply as a receipt or voucher, evidencing payment of the first monthly rental. No stipulation or agreement was entered into, and much less was there ever an understanding between lessor and lessee, that the rent receipt, with its inscription, would constitute a special contract between them and intended, as such, to serve that particular purpose. We are satisfied that such a voucher, or receipt, with its inscription, does not give rise to a contract between the parties and thereby impose upon the lessee the assumption of risk urged by defendant.
We recognize a distinction between rent receipts, commonly used in commercial transactions, and contracts or agreements between parties. The difference is obvious, which, in the one case, permits of no negotiation or discussion, being simply a fulfillment of one's assumed obligations, while, in the other, a contract or agreement between parties is a matter of discussion and arrangement, with full opportunity for deliberate reciprocal action.
In Lawes v. New Orleans Transfer Company, 11 La.App. 170, 123 So. 144, we held that a person who receives a check for baggage entrusted to a transfer company is not bound by an inscription on the baggage check limiting liability of the transfer company, in the absence of proof of assent by the passenger.
The case of Marine Insurance Company v. Rehm, La.App., 177 So. 79, involved the factual situation of a customer parking his automobile in a parking lot, paying the charge therefor, and receiving a tag on which were the words: "* * * We will not be responsible for loss or damage to automobiles * * * by fire, theft, or any other cause whatsoever, except damage * * * while being handled on our premises by our employees under our orders". The automobile was stolen, resulting in a suit for damages, and, it being shown that the customer did not know what was written on the tag until after the theft, we held that such a tag amounted only to a means of identifying his property, or mere receipt, and was not a special contract limiting the liability of the parking lot owner. Hoffman v. Zimmer et al., La.App., 175 So. 115.
Defendant having tendered this special defense, it is well settled that she assumed the obligation of proving the existence of this contract, or stipulation, with legal certainty. In this she has failed.
Defendant further contends that, in order to establish liability on her part, it is sacramental that the fall of the plaster result from an act of negligence on her part. By virtue of Articles 670, 2315 and 2322 of the Revised Civil Code, every owner is answerable in damages to any person rightfully on or near the premises who *West Page 843 
is injured by accident resulting either from the owner's neglect to maintain the building in a safe and livable condition, or from a vice or defect of original construction, provided the injured party be himself without fault. Klein v. Young, 163 La. 59,111 So. 495; Heath v. Suburban Building Loan Association, La.App., 163 So. 546; Tesoro v. Abate, La.App., 173 So. 196; Morris v. Hava, La.App., 180 So. 216; Hughes et al. v. Abate, La.App.,2 So.2d 68.
It is also well recognized that ignorance of the unsafe condition of a structure on the part of the owner, or that he did not, or could not, discover the defective condition, does not relieve him of the duty imposed by the Civil Code to maintain his property in a condition of safety to others. Tucker v. Illinois C. Railroad Company, 42 La.Ann. 114, 7 So. 124; Barnes v. Beirne, 38 La.Ann. 280; Allain v. Frigola, 140 La. 982, 74 So. 404; Serio v. American Brewing Company, 141 La. 290, 74 So. 998, L.R.A.1917E, 516; Atkins v. Bush, 141 La. 180, 74 So. 897, L.R.A.1917E, 809; Byrd v. Spiro, La.App., 170 So. 384.
The record discloses that the roofs of the premises in question were inspected four or five months prior to the accident complained of and that a certain leaky condition around the chimneys was corrected. We are convinced that the undisputed falling of the plaster resulted from the failure of defendant to have observed the obligations imposed upon her by maintaining the premises in such a condition as to avoid injury or damages to persons rightfully therein.
Mrs. Roppolo is 46 years of age, weighing approximately 167 pounds. Aside from her domestic duties, she assisted her husband in his cleaning and pressing business. The uncontradicted testimony shows that approximately one square yard of plaster fell from the ceiling, falling entirely upon her, no portion thereof striking her husband. It being the month of February, both were heavily covered, save their faces and head, and no injuries were received to that portion of her body so protected. She states that portions of the plaster, shown to be approximately five-eighths of an inch in thickness, struck her on the side of her face, forehead and neck; that the force of the blow immediately aroused her, the combined shock of the blow and the collapsing of the bed rendering her semi-conscious; that since the accident she has suffered intermittent shocking pains on the side of her head, face and neck, extending into her shoulder and arm, producing a temporary semi-paralysis of the left arm. She further states that she was confined to bed for two weeks and that, from that time to the date of the trial below, a period of about fourteen months, she has been forced to resort to periodical heat applications to alleviate her pains. She further states that she has been under the care of her physician since the accident, visiting his office two to three times a week.
Dr. E.F. Salerno, who examined the injured plaintiff two days after the accident, testified that he was called to her home and that he found her in a highly nervous condition, complaining of pains in the left side of her face, head and neck. His examination revealed multiple bruises and contusions on the left side of her face and shoulder, a discoloration in the central portion of the forehead, and injury to the muscles on the left side of the face and neck producing an inability to move her head to the left, right, or downwards. He testified that she also complained of severe pain on the left side of her face and concludes that she had an inflammation of the muscles and tissue covering the cheek-bone. He prescribed bromides and sedatives to relieve pain and nervousness, hot applications, other forms of heat treatment, and a lotion. He further states that she was unquestionably, in severe pain. His findings also disclosed that she was in a highly nervous state and that this nervous condition, which he terms "secondary hysteria", was partly due to the accident. Plaintiff received diathermic treatment at his offices for a period of almost eight months on an average of two to three times each week. Though he attributes plaintiff's long-existing pain and nervousness, which he terms "secondary neuralgia", to the accident, he testified that plaintiff is of a highly nervous temperament, a condition which had existed years prior to the accident and which undoubtedly was attributable to some constitutional cause. His conclusion is that plaintiff recovered completely from any possible effects of the accident within a maximum of eight months of its occurrence. He further stated that there is no evidence of any permanent injury or disability and that plaintiff is fully able to resume the duties she normally exercised prior thereto.
Dr. C.J. Tripoli examined the injured plaintiff two weeks prior to the trial below. *West Page 844 
From his examination he concluded that she was not suffering from any permanent injury or disability and that she did not objectively disclose any symptoms, or evidence of injury. He concludes, as did Dr. Salerno, that her nervous condition, as of the date of his examination, had been of long standing, being entirely disassociated from any possible effects of the accident.
In most cases where damages are sought on account of personal injuries, we necessarily experience difficulty in fixing the amount to be awarded. Ofttimes an arbitrary amount is arrived at. In the present case the difficulty is increased because the nature of the injury and the suffering experienced can only be judged from subjective conditions. The doctors themselves positively testify that the injured plaintiff, for years previous, had been suffering from a nervous disorder which they attribute to a constitutional cause. We are satisfied, however, that this plaintiff received injuries from which she experienced pain and discomfort. In seeking relief from those intermittent pains, she found it necessary to visit her physician's offices for heat treatments two to three times a week for a period of almost eight months. We readily recognize the inconvenience of the constant visits to her doctor's office and the discomfort of these treatments, with the attending stress of worry and anxiety over her ultimate recovery. Undoubtedly, she experienced pain and suffering and was partially incapacitated during this period of time. We are convinced, however, as are the doctors, that this condition did not exceed the maximum period of eight months and that a complete recovery has been effected.
We are not unmindful of the wisely established and sound rule that the findings of a court, a qua, on questions of fact, should not be disturbed unless there appears manifest error. We appreciate that our learned brother below was afforded the opportunity of hearing and viewing the witnesses, more particularly the complainant, and thus could determine, from her appearance and demeanor, the nature and extent of her injuries. But we are satisfied, in view of the injuries which she received, requiring almost constant medical attention for a period of about eight months, with the accompanying pain and suffering, that the amount awarded was somewhat insufficient. We have decided to allow Mrs. Rose Roppolo damages of $750.
Defendant lastly contends that since plaintiffs, in their petition, have affirmatively alleged that the premises in question, at the time of the lease agreement, belonged to the community of acquets and gains then existing between Louis Spiro and his wife, Sarah Lissa, both presently deceased, and that, having sought recovery against the Succession of Louis Spiro only, the amount of damages to be awarded, if any, should be decreed due by the Succession of Louis Spiro in the proportion of one-half.
Defendant's contention is not well founded. It is well settled that a third person's action for injuries as a result of defective premises is an action ex delicto, since recovery is limited under the provisions of Articles 670, 2315 and 2322 of the Civil Code. Klein v. Young, supra; Heath v. Suburban Bldg. 
Loan Ass'n, supra; Tesoro v. Abate, supra; Morris v. Hava, supra; Hughes v. Abate, supra; Coleman v. Rein, La.App., 4 So.2d 622, decided Nov. 17, 1941.
It is further well established that joint tortfeasors are liable in solido and that the injured party may sue any or all of the solidary obligors. Reneau v. Brown, 9 La.App. 375, 158 So. 406; Reid v. Lowden, 192 La. 811, 189 So. 286; Jones v. Maestri,170 La. 290, 127 So. 631; Rumpf v. Callo, 16 La.App. 12, 132 So. 763; Grantham v. Smith, 18 La.App. 519, 132 So. 805, 810; Diebel v. Bertucci, 19 La.App. 412, 140 So. 515; Quatray v. Wicker,178 La. 289, 151 So. 208; Grigsby v. Morgan, La.App., 148 So. 506; Gordon v. Bates-Crumley Co., La.App., 158 So. 223.
The judgment appealed from is amended by the increase of the amount awarded to Mrs. Rose Triolo, wife of Steve Roppolo, plaintiff, to $750. In all other respects, the judgment is affirmed, at the cost of appellant.
Amended and affirmed. *West Page 845