Defendant is the owner of the premises No. 3325 Broadway in New Orleans. Plaintiff, Kindrey Smith, and his wife, Beulah, allege that during the year 1939, the former leased the said house from defendant and that they then commenced to occupy it as a dwelling, and that on December 27th, 1939, Beulah Smith sustained personal injuries as the result of a defect in the floor of the porch adjacent to the kitchen.
They charge that the said floor was in a dilapidated and defective condition, that the said condition was unknown to the said Beulah Smith but that it should have been known to defendant whose duty it was to maintain the said property in good condition. They assert that defendant is made liable to them by Articles 670, 2315 and 2322 of our Civil Code, and that therefore Beulah Smith is entitled to a judgment against defendant for damages for the injuries which she sustained and that Kindrey Smith, as master of the community existing between himself and his said wife, is entitled to recover $22 which he alleges he expended for medical services and medicine made necessary by his wife's injuries. Beulah prays for judgment for $3,000.
Defendant filed exceptions of no right and no cause of action which were overruled, after which she filed answer admitting her ownership of the building and that she had leased it to Kindrey Smith, as alleged. She denies that the porch floor was in a defective condition and avers that if it should appear that there was any such defect, it was unknown to her "Even though she made periodical examinations of said property and kept it in a good state of repair * * *".
She also avers that if there was any such defect it "would be such a defect that could not be ascertained by examination, and therefore she is not guilty of any negligence whatever."
Defendant further denies that Beulah Smith sustained any such injury as alleged, or that there occurred any such accident, charging that this suit represents a fraudulent attempt to collect damages on untruthful allegations of the happening of an accident. Defendant in the alternative, *Page 370 
however, that it appear that there was any such accident, avers that the said Beulah Smith "sustained no injuries" and that "if she did sustain any, they were of such a negligible character as not to require medical attention."
Defendant, then assuming the position of plaintiff in reconvention, alleges that when Kindrey Smith abandoned the premises on or about April 8th, 1940, he was indebted unto defendant for rent, which was in arrears in the sum of $30.75. For this amount she prays for judgment in reconvention against the said Kindrey Smith.
There was judgment in favor of Beulah Smith for $1,500 but the claim of Kindrey Smith was dismissed, the District Judge stating that "the said Kindrey Smith failed to prove his claim."
In the judgment no mention was made of the reconventional demand. This judgment was rendered on July 9th, 1941. On July 15th, 1941, before it had been signed, defendant filed a written motion for a new trial, asserting therein that since the "trial" she had discovered new evidence "of great importance to her defense." After a hearing of the rule, a new trial was refused and defendant has appealed from the judgment which was then signed.
Defendant's counsel vehemently argue that the exceptions of no right of action and of no cause of action should have been maintained, and they also strenuously contend that the new trial requested should have been granted since the new evidence which was discovered would have served to throw further suspicion on the truthfulness of one of plaintiff's important witnesses.
The contention that the exceptions should have been maintained is the result of a misunderstanding of certain jurisprudence of this court and of our Supreme Court concerning the obligations imposed by law on property owners in favor of persons who may be injured on premises belonging to such owners. It is stoutly maintained on behalf of defendant that a property owner is not liable to such persons for injuries caused by defects in the premises unless the said owners knew or ought to have known of the defects, and unless the said owners with such knowledge, or constructive knowledge, failed to remedy those defects.
This misunderstanding is the result of a misinterpretation of what we said in Heath v. Suburban Building Loan Ass'n, 163 So. 546. In that case we said that a property owner is not the insurer of the safety of persons on his property and we showed that because of the wording of Articles 670, 2315 and 2322 of our Civil Code, such an owner is not liable unless there has been negligence on his part. But we also showed that there has been established in this state a rule of law that the mere occurrence of an accident caused by defective premises constitutes proof of negligence and renders the owner liable for the results, and we cited several cases which establish and sustain that view. For instance, we noted that in Hanover v. Brady, 148 So. 267, 268, we had said:
"It would seem, then, that, although the liability of the house owner to a licensee or passerby is made to depend upon negligence, the mere fact that the building is defective is in itself proof of that negligence, and this, whether the defect is apparent and easily discoverable, or is such as would not be noticed except upon careful inspection. * * *"
That rule is so well established that we need not discuss it further except to say that since the decision in the Heath case it has been reaffirmed in many others, notably Tesoro v. Abate, La.App., 173 So. 196; Staes v. Terranova, La.App., 4 So.2d 453; and Roppolo v. Pick, La.App., 4 So.2d 839. In Tesoro v. Abate it was held [173 So. 202]:
"* * * It is true that the jurisprudence of this state has broadened the language of articles 670 and 2322 of the Code to such an extent that the owner of a building practically insures any third person, rightfully on the premises, against injury caused by the vices or defects of the building due either to construction or failure to make repairs. And this is so even though the property is in possession of a tenant and the owner is not acquainted with the fact that some of the appurtenances of the building are in need of repair. The basis of liability for any tort is fault, and the decisions have presumed negligence on the part of the owner whether such negligence actually existed or not."
In Staes v. Terranova, supra [4 So.2d 455], we said:
"* * * On several occasions, in other cases, it has been contended that the owner of a building is not liable to third persons rightfully on the premises unless the injury had resulted from fault on the part of the owner. But from all of those *Page 371 
cases there has resulted a settled rule that because of the effect of Articles 670 and 2322 of our Civil Code, an owner is liable to a third person for the results of accidents caused by defects in the owner's building, whether those defects were latent or not. * * *"
In Roppolo v. Pick, supra [4 So.2d 843], we note the following:
"It is also well recognized that ignorance of the unsafe condition of a structure on the part of the owner, or that he did not, or could not, discover the defective condition, does not relieve him of the duty imposed by the Civil Code to maintain his property in a condition of safety to others. Tucker v. Illinois C. Railroad Company, 42 La.Ann. 114, 7 So. 124; Barnes v. Beirne, 38 La.Ann. 280; Allain v. Frigola, 140 La. 982, 74 So. 404; Serio v. American Brewing Company, 141 La. 290, 74 So. 998, L.R.A. 1917E, 516; Atkins v. Bush, 141 La. 180, 74 So. 897, L.R.A. 1917E, 809; Byrd v. Spiro, La.App., 170 So. 384."
It is true that in the Heath case we held that the owner was not liable but we reached this conclusion because of the fact that the defendant, though technically the owner of the property because it had been adjudicated to him at public sale, had, as a matter of law, no right to take possession of it. We therefore said that though it is well settled that where a defect is shown to exist negligence of the owner is presumed, this presumption must yield in the situation in which the defendant, though technically regarded as the owner, has not the legal right to repair the defect. Surely one is not negligent if he fails to do what he is not legally permitted to do, and that was the sole reason on which we rested our conclusion in the Heath case. We feel then that the exceptions were properly overruled.
We next consider defendant's contention that upon a showing of the discovery, since the trial, of new important evidence which, with due diligence, could not have been discovered before, she was entitled to a new trial as a matter of right. This argument is founded on defendant's interpretation of Article 560 of the Code of Practice, which under the heading "Peremptory grounds for new trial" provides that
"A new trial shall be granted
"1. * * *
"2. If the party has discovered, since the trial, evidence important to the cause, which he could not, with due diligence, have obtained before.
"3. * * *."
On behalf of plaintiff it is argued that in spite of that article there remains in the court much discretion to grant or to refuse a new trial even where the ground urged is that new evidence has been discovered, and it is also declared that here the so-called new evidence was discovered long before the judgment was rendered though it is true that it was discovered after the case had been submitted to the District Court. It appears from the record that the evidence was closed on April 9th, 1941, and that the judgment was not rendered until July 9th, 1941. We are told by counsel for defendant that during the taking of evidence on April 9th, the witness, Ollie Smith, placed on the stand by plaintiff, made certain statements which were untrue and that a day or so thereafter it was discovered that Mrs. J.W. Ross, Jr., could contradict these statements. Mrs. Ross' evidence was important. But instead of at once seeking a reopening of the case in order that it might be adduced, counsel for defendant allowed the District Judge to decide the case which he did more than two months later, and not until he had done so did they call his attention to this so-called newly discovered evidence. In other words, for almost three months, the case remained "under advisement" after defendant had discovered this so-called new evidence, and yet no effort was made to have the case reopened. Counsel for plaintiff argue that this is not newly discovered evidence within the contemplation of Articles 560 and 561 of the Code of Practice, and they point out that Article 561 requires that where a new trial is requested on the ground that new evidence has been discovered, there must be produced an affidavit showing, among other things, that the evidence for the introduction of which a new trial is sought, was discovered "since the judgment was rendered."
A reading of the two articles leaves us with the impression that in the former, which provides that "if the party has discovered, since the trial, evidence important, * * *."
The word "trial" was intended to be considered as synonymous with judgment, and it was not the purpose of the framers of the Code to permit a party, who has discovered new important evidence after the *Page 372 
other evidence has been taken and before a judgment has been rendered, to hold this evidence until a judgment has been rendered and then to demand a new trial on the ground of newly discovered evidence. We find no case in which there has been discussed the possible distinction between the discovery of new evidence after the "trial" and the discovery of new evidence after the judgment.
In Pahnvitz v. Fassman, 2 La.Ann. 625, a new trial was requested by plaintiff on the ground "that since the trial of the cause, and even since judgment was rendered, he had discovered important evidence which he could not obtain before * * *".
Both the lower court and the Supreme Court apparently ignored the statement that some of the evidence had been discovered before the judgment had been rendered, apparently treating the statement that such evidence had been discovered as of no importance. But we find no other case touching in any way upon the subject.
We think that defendant was not, as a matter of right, entitled to a new trial on the ground of newly discovered evidence. However a careful study of the entire record convinces us that there are so many suspicious circumstances and so much inconsistent testimony that possibly a different result would have been reached had this so-called new evidence been produced in the District Court.
This suit, by a tenant and a tenant's wife against a landlord, is one of those in which the accident is alleged to have occurred when no witnesses were present except the two persons interested. The evidence therefore concerning the actual occurrence is entirely within the possession of plaintiffs. It should be studied very carefully because in such situations the defendant is placed at an enormous disadvantage. Although the evidence is rather convincing that the hole through which Beulah says her leg passed was very small, she testifies that it went through "up to my thigh". Of course if it did so, bruises and scratches would have naturally resulted, and yet there is considerable evidence which leaves it very doubtful, if there were any such bruises or scratches.
Beulah is very certain that when the accident occurred her husband, Kindrey, went to the drugstore to get some liniment, and yet the husband is equally positive that he did not do so but that he found the liniment on the premises.
Beulah is quite certain in one part of her testimony that the board broke because the bottom part of it was rotten. She was asked what sort of a board it was and she answered:
"I thought it was sound, but when it broke, it was rotten from underneath."
A little bit later she said that it was not the board which was rotten but that it was the sill on which the board rested; and yet still later she said that the board "broke right through that knot."
It is obvious that when Beulah was taken to the hospital she attempted to convince the authorities there that she had suffered frequently from high fever at home. The hospital report shows that the patient "complains of high fever" and yet when her temperature was taken at the hospital it proved to be normal. In spite of these reports that she had suffered from high fever, she seems to have forgotten all about the fever for when she testified in court she said: "I didn't have any fever."
At the hospital something must have been said about the possibility of a suit against the landlord for that report shows that "there is a hint of litigation." We also find the fact, which is so often found in similar suits, that the plaintiff was in arrears in the payment of rent. We note a great insincerity on the part of Kindrey Smith and also on the part of Beulah in their testimony on this question; for instance, when Beulah was asked whether she did not owe "the landlady some rent", she answered: "I don't think I did.", and immediately afterwards admitted that "it might have been a couple of weeks, maybe, behind", and immediately followed that by saying that "If it was one month, I know it wasn't two."
When we examine the testimony of Kindrey Smith concerning his claim for $22, we find what we think is even more than insincerity. He makes apparently no effort to substantiate this claim. He testified that the doctor, whose name he did not know, had paid one visit; that the doctor sent a bill for $15 but he said "I cannot call the doctor's name." He did not have the bill with him. He said that he had spent $7 for medicine but he could not produce the bill. *Page 373 
Nor do we lose sight of the fact that there is evidence tending to show that possibly the damage to the porch had been caused not by a breaking of the board when Beulah stepped upon it but by an axe in the hands of Kindrey. The record does not show this but there is testimony throwing doubt upon whether or not any such accident occurred. In view of all of these facts, we think it best to remand the matter in order that the District Judge may reconsider the entire case together with such additional evidence as may be available. See Code of Practice Article 906.
It is therefore ordered, adjudged and decreed that the judgment appealed from be, and it is, annulled, avoided and reversed and that the judgment be and it is remanded to the Civil District Court for the Parish of Orleans for further proceedings according to law.
Reversed and remanded.
WESTERFIELD, J., concurs. *Page 560