This is a suit by the mother-in-law of a tenant against a landlord for damages for physical injuries sustained as the result of an alleged defect in the rented property based upon Articles 670 and 2322 of the Revised Civil Code. The petition alleges that Warren Borey leased from Anthony Capritto the premises No. 3920 Banks Street and that Mrs. Catherine Conlon Whittaker, his mother-in-law, who resided with him, was injured on December 18, 1939, when she stepped from the house onto the porch with the intention of going into the yard, because of the defective condition of the floor boards which "gave way and sagged" causing her to fall from the porch to the yard; that "the giving way and sagging of the flooring * * * was due to the fact that the tongue of one of the boards was rotten and that the groove of the other was split and broken * * *; the outside sill near the steps supporting the two boards that gave way and sagged was uneven and rotten"; that the gallery or porch, from which she fell, had no side rail with which she might have saved herself from falling. She sues for $6,245.37.
The defendant denied, for lack of sufficient information, that the plaintiff fell as alleged in her petition and also the allegations to the effect that the porch, where the accident is said to have occurred, was in any respect defective and, in the alternative, pleaded contributory negligence.
There was judgment below in favor of the plaintiff in the sum of $480. Defendant has appealed and plaintiff has answered the appeal asking that the judgment be increased to the amount originally prayed for. *Page 40 
The only witnesses to the accident besides plaintiff were her daughter, Mrs. Warren Borey, and her daughter-in-law, Mrs. Mildred Whittaker. According to the plaintiff she fell over the edge of the gallery and into the yard because "I stepped on the gallery and the board gave way, just sunk right down; my foot gave way and I was gone".
Mrs. Borey, who was waiting for her mother, intending to drive her to the cemetery, said that she saw her mother fall and, after picking her up, examined the gallery, where she found that a board had given way and a piece of it was lying on the step and that the boards furtherest from the house were rotten; that on the day after the accident she saw Capritto, the defendant, "putting a few nails in the gallery".
Mrs. Mildred Whittaker, who was with her mother-in-law, said that she saw the plaintiff fall from the gallery and that she subsequently examined the floor boards and discovered that they were in a bad condition. She also stated that the day after the accident she saw Capritto driving some nails into the gallery:
Warren Borey, plaintiff's son-in-law, the lessee, did not see the accident. He testified, however, that he examined the floor boards that afternoon and found them to be loose and rotten between the seams. He said that one piece about eight inches long and three-quarters of an inch wide was missing and that one of the boards, when stepped on, would give about three-quarters of an inch. He also stated that Capritto visited his home the following day.
Capritto denied that he knew anything about the accident until December 30, 1939, twelve days after it is alleged to have occurred, when Warren Borey, the lessee, told him about it. He denied driving any nails into the porch the day after the accident. The porch, according to Capritto, was built in 1932 and of the very best lumber and no repairs had been made since its erection. He stated that no complaint had been made by the Boreys concerning its condition.
J.D. Donnells, a carpenter of thirty-one years experience, examined the porch about seventeen days after the accident and found it in perfect condition, particularly the first and second boards nearest the outside, which were said to be rotten and the cause of plaintiff's fall. Donnells again examined the porch about two weeks later, and found that a splinter was missing between the first and second boards, which was not true at the time of his first examination. He stated that it appeared to him as if the splinter had been gouged out. He gave the dimension of the gallery as eight feet long and twenty-seven and one-half inches wide and said that there were five joists, in good condition, supporting it, and that the removal of the splinter could not have effected its stability.
Two other carpenters, E. Fortner and Carl Desporte, examined the porch on January 6, 1940, and both found it to be in perfect condition. They corroborated Donnells in every important particular.
It is apparent that the evidence is in irreconcilable conflict. We have no reason to suspicion the sincerity of the three carpenters who examined the porch on behalf of defendant and declared it to be in first class condition. They had no motive or interest in the case, and we certainly do not believe they would perjure themselves simply to support defendant's position. On the other hand, while all the witnesses for the plaintiff may be said to be interested because of their relationship to the plaintiff, we cannot say that the case was deliberately manufactured for the purpose of mulcting the defendant, which is the only logical consequence of the evidence given by defendant's witnesses. The fact that Mrs. Whittaker fell is not now disputed and counsel for Capritto explains it upon the ground that it was occasioned by her carelessness or inattention due to her eagerness to join her daughter and to proceed upon their errand to the cemetery. However, the trial judge accepted the version of the occurrence as given by the plaintiff and her witnesses, as is indicated by his judgment in plaintiff's favor and we cannot say that he was manifestly in error.
Dr. John L. Kron, a member of the staff of Dr. James T. Nix's Clinic, testified that he saw plaintiff, at her home, the afternoon of the accident, and that she complained to him of a severe pain in the shoulder region; that he caused an x-ray picture to be made of the shoulder and that it revealed a "complete fracture of the surgical neck of the left humerus with subluxation of the greater tuberosity in good position"; that for eight weeks plaintiff's left shoulder and arm were encased in a "Desault" bandage, which holds the shoulder in a favorable position for healing. On March 31, 1941, *Page 41 
about fifteen months after the accident, Dr. Kron, during the trial, made a casual examination of plaintiff. He stated that he was of the opinion that at that time plaintiff was still suffering from some limitation of motion of her arm.
Dr. Nix charged Mrs. Whittaker $87 and she expended $57.00 for medicine and x-rays.
Under the circumstances an award of $600 for all items of damage, we believe, proper. Staes v. Terranova, La.App.,4 So.2d 453.
For the reasons assigned the judgment appealed from is amended by increasing the amount awarded below from $480 to $600 and, as thus amended, it is affirmed.
Judgment affirmed.